RAYMOND WAHL, by next friend, BERTHA A. WAHL, v. ST. LOUIS TRANSIT COMPANY, Appellant, and UNITED RAILWAYS COM-PANY.

Division Two, April 2, 1907.

1. NEGLIGENCE: Motorman: Scope of Duties: Waving at and Frightening Child: Allegations. A motorman in control of and operating a street car in a public street has authority to do all acts reasonably necessary and incidental to the proper discharge of his duties, among which is the duty to so operate the car as not to injure pedestrians and children on the street who may assume positions of danger, and to warn persons away from places of danger, and if he negligently fails to do that and as a result pedestrians are injured by the car, it is the negligent act of his employer; and an allegation that defendant was operating a car in charge of its motorman on a named public street, and that at a certain point the motorman negligently left his post on the car and negligently waved to plaintiff, who was a child of tender years playing on a pile of lose earth beside the track, and thereby so frightened him as to cause him to start to run across the track in front of the car, are sufficient to show that the act of the motorman was within the scope of his employment.

2. ————: ————: ————: ————: Evidence. A child was standing within a foot and a half of the track when the car was yet ten or fifteen feet from him. According to plaintiff's evidence the motorman stepped from his place in front of the car, and with his right foot upon the step of the front platform reached out with his arm to wave or frighten the child away, whereupon the child started to run across the track in front of the car and was struck by it. Held, that, ordinary care would have suggested to the motorman, considering the tender years of the child, to slow down his car and stop it if necessary until he was assured of the child's safety, and the act was done in his master's service, and came within the scope of his employment, and a verdict finding that it was negligent is upheld.

3. ————: ————: ————: Instruction. An instruction setting forth the general acts of negligence charged, and correct as far as it goes, is not erroneous because it does not specifically require the jury to find that the negligent act of the motorman was within the scope of his authority. If defendant considered that a defect in the instruction, it was its duty to supply it by asking an instruction on the subject.

4. ————: **Rejecting Testimony.** The appellate court will not re-ject the testimony of witnesses as unworthy of belief. It is for the jury to determine which of the witnesses they will be-lieve.

Appeal from St. Louis City Circuit Court.—*Hon. War-wick Hough,* Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1)   Even though it were true that the motorman got down on the step and reached toward plaintiff and thereby caused him to run in front of the car and to be injured, yet defendant is not liable, because it ap-pears from all the evidence in this record that such an act did not pertain to the particular duties of the mot-orman as such and was not within the scope of his em-ployment.   Snyder v. Railroad, 60 Mo. 413; Cousins v. Railroad, 66 Mo. 576; Meade v. Railroad, 68 Mo. App. 97; Overton v. Railroad, 111 Mo. App. 613; Rail-road v. Mogk, 44 Ill. App. 17, 80 Ill. 411.   (2)   The judgment should be reversed because the verdict of the jury was actuated by passion and prejudice against de-fendant and sympathy and compassion for plaintiff. Spohn v. Railroad, 87 Mo. 84; Lehnick v. Railroad, 94 S. W. 996.

*A. R. Taylor, Bishop & Cobbs* and *Albert E. Haus-man* for respondent.

(1)   It is the highest duty of the motorman in op-erating cars in streets of a city to take care to avoid running his car over persons on the street, whether adults or children.   Riska v. Railroad, 180 Mo. 179; Eckhard v. Railroad, 190 Mo. 618; Koenig v. Railroad, 194 Mo. 573.   (2)   Instructions which are good as far

as they go, but do not cover the entire case, amount in civil cases only to non-direction and not to error, and it is the duty of the other party to ask proper instructions to supply the shortcomings of those asked by his adversary. Bank v. Ragsdale, 171 Mo. 186; Drey v. Doyle, 99 Mo. 465; Cornwell v. Railroad, 106 Mo. App. 135, 174 Mo. 444; Railroad v. Randolph Townsite Company, 103 Mo. 468; Montgomery v. Railroad, 181 Mo. 477; Hall v. Hall, 107 Mo. 101; Wheeler v. Bowles, 163 Mo. 398; 11 Ency. Pl. and Pr., pp. 217 to 224; 2 Thompson on Trials (1889), pp. 1639, 1697. (3) It is misleading and confusing to incorporate in an instruction facts which are not in dispute, thus requiring proof of them by the party alleging them. Such facts may be assumed. Anderson v. Bradford, 102 Mo. App. 433; Park v. Railroad, 178 Mo. 108; McLean v. Kansas City, 100 Mo. App. 625; State ex rel. v. Branch, 151 Mo. 630; Farber v. Railroad, 139 Mo. 285; Weldon v. Railroad, 93 Mo. App. 675. (4) Defendant can not now call upon the appellate court to decide a question of fact which it did not offer to submit to the jury by a request that the trial court give an instruction properly submitting said question to the jury. A party is limited on appeal to the theory upon which he tried his case in the lower court. Bertram v. Railroad, 108 Mo. App. 70; Horgan v. Brady, 155 Mo. 659; Chinn v. Naylor, 182 Mo. 583.

GANTT, J.—This is an action by Raymond Wahl, a minor, who at the time of his injury was of the age of five years. The action was brought through his mother, who was duly appointed as his next friend prior to the filing of the petition. The petition alleges that the defendant, at the time of the injuries complained of, was a corporation by virtue of the laws of Missouri, and used and operated a railway and the cars

thereon for the purpose of transporting persons for hire from one point to another in the city of St. Louis. That Twenty-second street at the time and place mentioned in the petition was an open public street within the city of St. Louis; that on the 3d day of June, 1903, the plaintiff was on Twenty-second street north of Montgomery street near the defendant's track and in danger, by reason of his youth and want of discretion, of being struck and injured by the defendant's northbound car then approaching the place where plaintiff was beside and near the defendant's track; that whilst plaintiff was in such exposed position liable by reason of his youth and want of discretion to expose himself to peril from said car, the motorman of said car negligently left his post on said car where he could control and manage the said car and negligently waved to the plaintiff and other children to move, and thereby caused the plaintiff, who was standing on the side of the bank near the defendant's track, to start to run across said track whilst said motorman was so negligently away from his post, and when he was unable to reach his post and stop said car, and thereby negligently caused and suffered said car to run upon and against the plaintiff, and drag him and permanently injure him, cutting off his right thumb, crushing and mangling the fingers of his right hand, crushing his right hand, tearing off his scalp and lascerating his head, knocking out six teeth, lascerating his face, lips and mouth and injuring him internally. That by his injuries so sustained plaintiff has suffered and will suffer great pain of mind and body and is maimed and crippled for life and will lose the earnings of his labor after he shall arrive at the age of twenty-one. He prayed for damages in the sum of ten thousand dollars. The answer was a general denial.

The action was originally brought against both the St. Louis Transit Company and the United Rail-

ways Company, but at the close of the evidence, the
trial court sustained a demurrer to the evidence in be-
half of the United Railways and the cause went to the
jury against the defendant Transit Company only.

The evidence for the plaintiff tended  to  prove
that Twenty-second street and Montgomery street are
both public highways in the city of St. Louis.  Mont-
gomery street runs west from Twenty-second street,
but  does  not  cross  Twenty-second  to  the  east;
that on the third of June, 1903, the Transit Company,
the defendant herein, operated a single track railway
on Twenty-second street, on which its cars ran north;
that the plaintiff's mother lived three doors from the
corner of Montgomery and Twenty-second streets at
house numbered 2205 Montgomery street, and plain-
tiff's father was dead.  At the time of the injury, the
plaintiff was five and a half years old and lived with
his mother.  On the third day of June, 1903, the La-
clede Gas Light Company was engaged in putting some
gas pipes just north of the north crossing of Montgom-
ery and Twenty-second streets, and for this reason had
excavated a trench in Twenty-second street, a foot or
so  north  of  said  north  crossing.  The  Gas Com-
pany in making  the excavation  in  Twenty-second
street near the north crossing thereof on Montgomery
street, had by their servants thrown the dirt taken out
of the trenches into a pile on the north side of the
trench and this pile of dirt extended up to within a foot
or so of defendant's track.  The plaintiff was playing
at this pile of dirt, filling a box he had with loose dirt
and then emptying it again.  The plaintiff's evidence
tended to show that while at play on this pile of dirt,
he was in dangerous proximity to a passing car if he
should move or slip toward the track.  A north-bound
car on defendant's track came along about five o'clock
that afternoon.  The motorman on this car, seeing the

child was near the track, stepped from his place at the front of the car, with his right foot down on the step of the front platform, and as it approached where the child was, reached out with his arm to wave or frighten the child away, whereupon the plaintiff undertook to run across the track in front of the car, and was struck and knocked down by it and run over and sustained the injuries alleged in the petition. The injuries were so serious that the verdict is not assailed as excessive if otherwise proper.

There was a sharp conflict in the evidence. On the part of the plaintiff the evidence of two of the employees of the Gas Light Company, Sims and Murphy, tended to show that they were working in the trench, which was about two and a half feet wide and from one to four feet deep, north of and adjoining the north crossing of Montgomery street and running east and west from the car track toward the curbing. Murphy was digging in the trench and Sims was shoveling away the earth and macadam that Murphy had thrown out within about a foot of the trench and on the north side thereof and running its full length. The earth was piled up a foot or two high. Sims testified that he was standing on the north side of the hole at the west end near the track and the little boy, the plaintiff, was playing with the dirt that he piled up there; that the little boy was standing near enough to the track, if he had remained still, for the motorman to have reached out with his hand and touched him, or about three feet from the side of the car; that when the motorman reached out, the plaintiff started to run. The plaintiff was looking at the car as it came towards him; when the motorman reached out after him he got scared and ran down and around the pile of dirt and went in front of the car; the car did not stop at the crossing,

though the evidence tends to show that one passenger jumped off there. When the motorman saw the plaintiff start towards the track, he stepped back to his post and tried to stop the car before it struck the boy, but before the motorman regained his position, the boy was knocked down by the car. The two witnesses, Sims and Murphy, fixed the place of the accident near the trench where they were working not over six feet from the crossing; another witness for the plaintiff, a passenger, thought it occurred about twenty feet from the crossing "more or less;" and a lady, Mrs. Heitland, testified that she saw the car just as it was coming from the crossing at Montgomery street, and saw the child jump from the mud pile that the gas men were digging, and he ran right on to the car track; she did not wait to see what became of the boy after the car struck him; she did not think the car was more than ten feet across the crossing when the accident happened.

The defendant's evidence tended to establish that the ditch or trench dug by the gas men ran north and south within four or five feet of the east side of the defendant's track; that the earth thrown up had formed a mound parallel with the track; that when plaintiff was struck by the car, he was from sixty-five to one hundred feet north of the north crossing of Montgomery street; that the car in question made a stop at the north crossing of Montgomery street and a passenger alighted there; that plaintiff was playing on the mound of dirt in the street; when the car was within ten or fifteen feet of plaintiff he turned around, saw it and started in a run across the track in front of the moving car; when on or about the east rail of the track and within about five feet of the car, he stumbled and fell between the rails; that upon seeing the plaintiff start towards the track, the motorman reversed the car and brought it to a stop within some ten or fifteen feet

after it had struck the body of the little boy; that the motorman was at his post of duty as the car passed Montgomery street, and so remained until it was stopped by him after it had struck the plaintiff. The motorman in his testimony was asked: "You are the motorman who had charge of the car that struck the little boy here are you?" Ans. "Yes, sir."

Mr. J. J. Cordes testified that the plaintiff walked to about a foot and a half from the rail of the track, then stopped; when the car got within five or ten feet of the boy he looked up again; he supposed he was going across the track to his companions, and just then the boy happened to fall there on the track and the car came along and the motorman could not stop it in time to prevent striking him. On cross-examination he stated that the boy was in about the middle of the roadway between the track and the curb on the east, and he thought the roadway was about six feet, that would make the boy about three feet from the track. The boy then walked towards the track, the car was then ten or fifteen feet away from him and he walked about a foot and a half from the rail, the car was about ten or fifteen feet from him, he stopped right there and looked at the car, then the motorman rang the bell, then the boy made to cross the street, and he must have stumbled over something and fell inside of the track, he got about a foot within the rails. The car was about five feet from him when he stumbled. The right front gate of the front platform was open.

At the close of the evidence the court gave the following instruction for the plaintiff:

"If the jury find from the evidence in this case that on the 3rd day of June, 1903, the defendant was operating the railway and car mentioned in the evidence, and if the jury find from the evidence that on said day Twenty-second street at the places mentioned

in the evidence, was an open public street within the city of St. Louis, and if the jury find from the evidence that on said day the plaintiff was on said Twenty-second street north of Montgomery street near defendant's track, and that at said time the plaintiff was of tender years and without discretion to understand the peril of being struck by defendant's car, and if the jury find from the evidence that as defendant's car approached the place where the plaintiff was so upon said street defendant's motorman stepped on the step of the front platform of said car and reached with · his hand towards the plaintiff and frightened him, and if the jury find from the evidence that the plaintiff was thereby and by reason of his want of discretion, caused to run in front of said car and to be knocked down, dragged and injured by said car, and if the jury find from the evidence that defendant's motorman did not exercise ordinary care in so reaching towards the plaintiff and causing him to be frightened and that thereby the plaintiff was so caused to sustain said injuries, then plaintiff is entitled to recover.''

The court also instructed as to the credibility of witnesses, and gave the usual instruction on the measure of damages.

The defendant requested the court to instruct the jury: ''If you find from the evidence in this case that plaintiff went suddenly upon the north-bound track in such close proximity to defendant's moving car as to render it impossible for the motorman in charge thereof by the exercise of ordinary care and with the use of the appliances at hand to stop said car in time to avoid striking plaintiff, then he is not entitled to recover and your verdict must be for the defendant.'' The court refused this instruction as asked, but added to it the words, ''Unless you believe he was caused to so go

upon defendant's track in consequence of having been frightened by defendant's motorman in charge of said car,'' and gave it as amended, to which amendment the defendant then and there at the time duly excepted. The defendant also asked an instruction in the nature of a demurrer to the evidence, at the close of plaintiff's case, which was refused as to the Transit Company, and defendant duly excepted.

The jury returned a verdict for the plaintiff and assessed his damages at five thousand dollars, and the judgment was rendered accordingly. Within proper time the defendant filed its motion for a new trial and in arrest of judgment, which were overruled, and the defendant appealed to this court.

I. Only two assignments of error are made by the defendant for the reversal of the judgment. The first point is that the first instruction given for the plaintiff did not submit to the jury any act of the motorman which can lawfully be held to be negligence; that the act of negligence submitted by said first instruction is not an act alleged by or which appears from the petition to have been within the scope of the duty of the motorman. The petition alleges that the defendant herein was a corporation and was using and operating a railway and cars for the transportation of persons for hire from one point to another in the city of St. Louis, and that Twenty-second street was an open public street in said city, in which the defendant had a track, and that on the day of the injury to plaintiff, the plaintiff was standing near the defendant's said track and by reason of his youth and want of discretion was in danger of being struck and injured by defendant's north-bound car then approaching the place where he stood near the said track, and that the motorman of said car negligently left his post on said car where he could control and manage it and negligently

waved to the plaintiff and thereby caused plaintiff to
start to run across the said track while said motorman
was so negligently away from his post, and when he
was unable to reach his post and stop said car, and neg-
ligently caused and suffered said car to run over plain-
tiff and permanently injure him.    These allegations
amount to the charge that the defendant was operating
a car in charge of one of its motormen upon a public
street and the legal implication follows that it was the
imperative duty of the motorman ⸰to so manage and
control the said car, of whose motive power he was in
charge, as to prevent said car from running over per-
sons in the street, and the allegation that instead of
so doing the motorman negligently left his post and
negligently waved to the plaintiff who was a child of
tender years and incapable by reason of his youth and
want of discretion from understanding his danger of
being struck by said car, and so frightened the plaintiff
as to cause him to start to run across said track in front
of the car, we think was sufficient to show that the act
of the motorman was within the scope of his employ-
ment.    We think that a motorman engaged in control-
ing and operating a public conveyance on the public
streets of the city has authority to do all acts reason-
ably necessary or incidental to the proper discharge
of his duties as such motorman, among which is his
duty to so operate his car as not to injure pedestrians
or children on the public streets who may assume posi-
tions of danger, and to warn persons away from places
of danger, and if he negligently fails to do so and there-
by pedestrians are injured by his car, it is the negligent
act of his employer.    The facts alleged in the petition
and those upon which the plaintiff's first instruction
are predicated were sufficient to show that the motor-
man was acting within the scope of his duties as the
agent and employee of the defendant.    In support of

its contention that it is not liable because it appears from the evidence that the act of the motorman in frightening the little boy did not pertain to the duties of the motorman as such and was not within the scope of his employment, we are cited by the defendant to the decision of this court in Snyder v. Railroad, 60 Mo. 413. In that case, it was held that "the rule is firmly established that the master is civilly liable for the tortious acts of his servants, whether of omission or commission, and whether negligent, fraudulent or deceitful, when done in the course of his employment, even though the master did not authorize or know of such acts, or may have disapproved of or forbidden them. [Garretzen v. Duenckel, 50 Mo. 104.]" And this doctrine has been reasserted in Milton v. Railroad, 193 Mo. l. c. 57, and Chicago Herald Company v. Bryan, 195 Mo. 574. The chief difficulty which has arisen in the application of this rule has been in ascertaining whether the act complained of was committed in the course of the servant's employment.

In Snyder v. Railroad, this court cited with approval the case of Wilton v. Railroad, 107 Mass. 108, in which it appeared that the plaintiff, a girl of nine years of age, was walking with several other girls upon the Charleston bridge about seven o'clock in the evening, when one of defendant's horse cars came along very slowly and the driver beckoned to the girls to get on, they thereupon got on the front platform and the driver immediately struck his horses, when by reason of their sudden starting, plaintiff lost her balance and fell so that one of the wheels passed over her arm. It was admitted that the plaintiff was not a passenger for hire and that the driver had no authority to take the girls upon the car and carry them unless such authority was implied from the fact of his employment as driver; the court said: "The driver of a horse car

is an agent of the corporation in operating the car. If
in violation of his instructions, he permits persons to
ride without paying, he is guilty of a breach of his duty
as a servant. Such act is not one outside of his duty,
but is an act within the general scope of his agency,
for which he is responsible to his master. In the case
at bar, the invitation to the plaintiff to ride was an act
within the general scope of the driver's employment,
and if she accepted it innocently, she was not a tres-
passer. It is immaterial that the driver was acting
contrary to his instructions." In the Snyder case the
question before the court was the sufficiency of a peti-
tion upon demurrer. The petition in that case charged
that the injury complained of was received by the plain-
tiff's son while attempting to get on the cars in conse-
quence of an invitation extended to him at the time by
the servant of the defendant in charge of said cars, and
this court asked the question upon such averment:
"Can such injury be said to have happened by reason
of any act of defendant's servants within the scope of
their employment? It is charged to have been the run-
ning of the engine and cars of the defendant between
two points within the limits of the city of St. Joseph.
It does not appear whether such cars were at the time
being used in the transportation of passengers or *of
freight only,* or whether the defendant's servants were
merely engaged in switching cars to be thereafter used
for passengers or freight." Judge Hough, in the fur-
ther discussion of the case, cited with approval the
case of Flower v. Railroad, 69 Pa. St. 210; in that case
the fireman on an engine, which with a tender and one
freight car had been detached from a train of cars and
was standing at a water station for water, requested
a small boy standing near to put in the hose and turn
on the water, and while the boy was climbing on the

tender to put in the hose, the freight cars belonging to the train ran down without a brakeman and struck the car behind the tender and the boy fell from the tender and was crushed to death. There was testimony that the engineers were not permitted to receive any one on the engine but the conductor and the superintendent. The court held that the boy was not a passenger or one to whom the company owed a special duty, and then asked the question: "Was there a general authority which would comprehend the fireman's request to the boy to fill the engine-tank with water? This seems to be equally plain without resorting to the evidence given, that engineers are not permitted to receive anyone on the engine but the conductor, and the fireman or superintendent; that it is the duty of the fireman to supply the engine with water; that he has no power to invite others to do it, and can leave his post only on a necessity." Accordingly this court held in the Snyder case that the acts of the defendant's servants as alleged in the petition, in inducing, encouraging and permitting the plaintiff's son and others to ride upon the cars operated by them cannot be viewed as having been done by them in the course of their employment. But in the same case, the case of Lynch v. Nurdin, 1 Ad. & El. (N. S.) 29, was cited with approval. In that case, the servant of the defendant who negligently left a horse and cart in his charge, unattended in the street, whereby an infant, who merely indulged the natural instinct of a child in amusing himself with the empty cart and deserted horse, and to whom no concurrent negligence could be imputed, was injured, was clearly guilty of a negligent act in the course of his employment. And this court in the Snyder case said: "The petition contains no allegation of negligence on the part of defendant's servants at the time the child attempted to get upon the train. Such an al-

legation would have brought the case within the rule laid down in Lynch v. Nurdin, if the negligent acts alleged pertained to the particular duties of the servant's employment.''

The facts of this case clearly distinguish it from Snyder v. Railroad, supra. Here the negligent act charged pertained directly to the duties of the motorman as such, among which, as we have already said, was his duty to so manage his car as not to negligently injure pedestrians, whether adults or infants of tender years, and to warn them when apparently in danger, of the approach of his car, and the charge is that he negligently so performed that duty as to frighten a child with no discretion and too young to appreciate his danger and thereby caused him to run upon the track in front of the moving car and to be injured. This was the method resorted to by the motorman to guard the child from being run over. It is true the defendant insists there was no proof of what the purpose of the motorman was in making the motion to the child with his hand. The motorman denied that he made such a motion, but the jury evidently found that he did and ascribed to him a good motive rather than a bad one. The jury were justified in holding that he adopted this method of warning the child. Taking the defendant's own witness Cordes' testimony, it appears that the child was standing within a foot and a half of the rail when the car was yet ten or fifteen feet from him. In such circumstances, ordinary care would have suggested to the motorman, considering the tender years of the plaintiff, to slow down his car and stop if necessary until he was assured of the safety of the child. The law made it his duty not to run over children in the street and the jury found that the very act that he did was in trying to serve his master by scaring the child away from its dangerous position. Under all the evi-

dence we think the jury was justified in finding that the act was one done in his master's service and within the scope of his employment, and considering the age of the child, his proximity to the rail of the track on which the car was moving, and all the circumstances, the jury was justified in finding that it was a negligent act.

Defendant, however, urges as another objection to this instruction of the plaintiff, that it fails to submit to the jury that the act of the motorman was within the scope of his duty as a motorman. We do not think this position is tenable. The defendant asked no instruction of the court to the effect that this act of the motorman was not within the scope of the motorman's duty and the case was evidently tried on both sides on the theory that, if the motorman was guilty of the acts charged in the petition, and left to be found by the jury in the plaintiff's instruction, the defendant was liable. That the instruction was correct as far as it went there can be, in our opinion, no doubt, and the fact that the court did not go further and direct the jury specifically to find that it was within the scope of the motorman's employment, we have often ruled is not error, but it is the duty of the opposite side to ask a proper instruction to supply the defect which he deems necessary in those of his adversary. [First National Bank v. Ragsdale, 171 Mo. 168; Wheeler v. Bowles, 163 Mo. 398; Farber v. Railroad, 139 Mo. l. c. 285.]

Our conclusion is that neither of the objections to this instruction is well taken.

II. It is also urged that the verdict is a result of passion and prejudice on the part of the jury. We are asked by learned counsel to reject the testimony of Sims and Murphy as utterly unworthy of belief. We have read the testimony on both sides and while there is a conflict in the evidence, it was for the jury who saw

the witnesses and heard them testify to determine which of them they would believe and they evidently believed the witnesses of the plaintiff and their verdict was approved by the circuit court who tried the case. This court cannot undertake to weigh the evidence and it has often decided that it would not. Were we, however, to go into this matter of weighing testimony, we would find it hard to reconcile the testimony of defendant's own witnesses. The jury, as was its duty, weighed the contradictions in the evidence and found for the plaintiff and we see no reason for interfering with their verdict, and the judgment must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.