SARAH FLEISHMAN, Respondent, v. POLAR WAVE ICE AND FUEL COMPANY, Appellant.

St. Louis Court of Appeals, April 19, 1910.

1. **NEGLIGENCE: Runaway Horses: Inferring Negligence: Evidence.** Most decisions sustain the doctrine that negligence can not be inferred merely from the fact a team or horse ran away and caused damage, since runaways occur from the fright of horses, when those in charge of them are not at fault.

2. **———: Personal Injuries: Negligent Driving: Sufficiency of Evidence.** Where a driver drove his wagon against another wagon which was standing on the street, causing the tongue of the latter to swing around and strike a pedestrian, the accident happening in daylight and there being ample room in the street for a team and wagon to pass the standing wagon without striking it, the conclusion the driver was negligent is nearly irresistible.

3. **———: Inferring: Not Necessary to Exclude All Other Causes of Injury.** It is not the rule that negligence can be inferred as the cause of an accident from the facts of the occur-

rence only when all other possible causes are excluded, for it is conceivable in practically every instance the accident might, within the range of possibility, have been due to something else.

4. ———: ——— Res Ipsa Loquitur. If the instrumentality that did the damage was under the management of a person and the accident was such as does not happen in the ordinary course of events, when the instrumentality which caused it is handled with due care, an inference of negligence may be drawn from the testimony.

5. ———: Personal Injuries: Negligent Driving: Evidence: Physical Facts. In an action for personal injuries, plaintiff's evidence tended to prove that a wagon, standing on the east side of a street, with the tongue rigid and pointing northward, was struck by a north-bound wagon, causing the tongue of the standing wagon to swing around and strike plaintiff, who was walking north on the east side of said street, on her right side. Held, this was by no means an impossible.accident and though plaintiff testified the tongue hit her on the right side as it swung from the left, it may have happened she was facing obliquely at the moment, so that her right side was the more exposed to a blow.

6. ———: ———: ———: ———: Ownership: Name on Wagon. Evidence that defendant's name was on the wagon which collided with the standing wagon was competent to show that such wagon was in charge of defendant's servants, and that they were acting in the course of their employment at the time.

7. ———: ———: ———: ———: ———. Perhaps proof of the name on the wagon alone would carry the case to the jury on the issue of defendant's liability.

8. ———: ———: ———: ———: ———: Authority of Servants: Evidence Held Sufficient: Facts Stated. In addition to proving that defendant's name was on the wagon which collided with the standing wagon, it was proved it was similar to many wagons used by defendant and used in its business and seen in its yard in the immediate vicinity of the accident; that the wagon was coming from the direction of said yard at the time; that no other concern used similar wagons. Defendant offered no evidence to prove the wagon did not belong to it, was not in charge of its servants, or, if it was, that the servants were not in the performance of a task for defendant at the time, but engaged upon some purpose of their own. Defendant sent a physician to examine plaintiff and ascertain the extent of her injuries. Held, the evidence was sufficient to establish prima facie that the wagon which caused plaintiff's injury was owned by defendant, was in charge of its servants, and they were engaged in its service when the collision occurred.

9. ——: ——: ——: ——: ——: ——: **Instructions.** In an action for personal injuries through the negligent driving of defendant's wagon, an instruction requiring the jury to find only that the wagon was in charge of defendant's servants, and omitting to require a finding that they were engaged at the time in the course of their employment, was erroneous; plaintiff's evidence on the latter point not being sufficient to permit more than inferences.

10. ——: ——: ——: ——: ——: ——: **Inferences for Jury.** In an action for personal injuries, where the questions of the defendant's ownership causing the injury and its responsibility for the servant in charge of it are contested issues of fact, and the evidence for the plaintiff is only sufficient to permit inferences by the jury, the defendant is entitled to have the jury weigh such evidence and find from it what they deem were the probable facts.

11. ——: ——: ——: ——: ——: ——: ——. While it is true the courts have held defendants in like cases are called on to exonerate themselves by testimony to show the culpable persons were not their employees, or were not in their line of duty, and have said those facts would be presumed, what is meant is, that it is incumbent on a defendant to show those facts in defense, after the plaintiff has shown prima facie to the contrary, and the word "presumed" is used in the sense of "inferred" and does not signify the inference was compulsory, but that it might be made by the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*Watts, Williams & Dines* and *Wm. R. Gentry* for appellant.

(1) The demurrer to the evidence should have been sustained: (a) Because there was no evidence whatever of any negligence on the part of the defendant, or anybody else, contributing to the plaintiff's alleged injuries. The doctrine of *res ipsa loquitur* does not apply here; negligence cannot be inferred from the mere striking of one wagon by the other. Some negligent act on the part of defendant must be proven. Schmidt v. Hark-

ness, 3 Mo. App. 585; Cotton v. Wood, 8 C. B. (N. S.)
568; Same case, Thompson on Neg. (1 Ed.), p. 364;
Lane v. Crombie, 12 Pick. (Mass.) 415; Same case,
Thompson on Neg. (1 Ed.), p. 376; Schmidt v. Railroad,
149 Mo. 269; Dowell v. Guthrie, 99 Mo. 653; Bigelow v.
Reid, 51 Me. 325; Lane v. Crombie, 29 Mass. 177; Lee
v. Jones, 181 Mo. 291; Waters v. Wing, 59 Pa. (9 P. F.
Smith) 211; Herschberger v. Lynch, 11 Atl. 642; Par-
sons v. Yeager Milling Co., 7 Mo. App. 594; O'Malley
v. Railroad, 113 Mo. 320; Garlick v. Dorsey, 48 Atl. 220;
O'Brien v. Miller, 60 Conn. 214; Bennett v. Ford, 47
Ind. 264; Shawhan v. Clarke, 24 La. 390; Broult v. Han-
son, 158 Mass. 17; Kenney v. Way, Brightly, N. P. 186;
Britton v. Frick, 51 Conn. 342; Gray v. Thompson, 15
N. Y. Supp. 453; Goransson v. Mfg. Co., 186 Mo. 300;
Epperson v. Telegraph Co., 155 Mo. 346.   (b)   The de-
murrer to the evidence should have been sustained be-
cause there was no evidence offered by plaintiff proving,
or tending to prove, that the wagon designated by her
as the "Polar Wave" wagon was operated by the defend-
ant, through a servant acting in the line of his employ-
ment as a servant of the defendant.   Without such proof
the plaintiff's case ought not to have gone to the jury.
Frisby v. Transit Co., 113 S. W. 1059 and cases cited;
Evans v. Automobile Co., 121 Mo. App. 266; Cousins
v. Railroad, 66 Mo. 576; Brenner v. Ford, 116 La. 550;
Fiske v. Enders, 73 Conn. 338; Fish v. Coolidge, 47 App.
Div. 149; McCartney v. Timmins, 178 Mass. 378; Thorp
v. Miner, 109 N. C. 152; Goodman v. Kennell, 3 Cor. &
P. 168; Reaume v. Newcomb, 124 Mich. 137; Perlstein v.
Am. Exp. Co., 177 Mass. 530; Stone v. Hill, 45 Conn.
44; Patterson v. Kates, 152 Fed. 481; Slater v. Adv.
Thresher Co., 97 Minn. 305; Lotz v. Hanlon (Pa.), 66
Atl. 525; McMullen v. Hoyt, 2 Daily at p. 277.   (c)
The demurrer to the evidence should have been sustained
because the plaintiff's account of the manner in which
she was injured was so absolutely contrary to physical
facts that it was not sufficient to entitle her to have her

case submitted to the jury. When that is true, the case should be taken from the jury. DeMaett v. Fidelity & Casualty Co., 121 Mo. App. 92; Schaub v. Railroad, 113 S. W. Rep. 1163. (2) The court erred in admitting evidence as to the wording on the wagon which struck Moll Grocery Company's wagon. This evidence was purely hearsay and did not tend to establish the operation of the wagon. (3) The court erred in giving instruction numbered 1, at the request of the plaintiff, because said instruction permits the plaintiff to recover regardless of whether the man driving the wagon was acting in the line of his duty for the defendant or not.

*J. F. Coyle* and *Morrow & Kelley* for respondent.

GOODE, J.—This plaintiff dwells on the east side of Eleventh street, between Wash street on the south and Carr street on the north, her residence being No. 1006 North Eleventh. Defendant, a corporation engaged in the ice and fuel business, maintains a yard and place of business at the corner of Eleventh and Wash streets and, we gather from the record, almost immediately opposite the home of plaintiff. The Moll Grocer Company has a stable for horses and teams at No. 1020 North Eleventh street, on the same side as plaintiff's residence and a few doors north. Plaintiff received an injury in front of the Moll stable about noon on January 21, 1908, and in this manner: A two-horse wagon belonging to the Moll Company stood in front of their stable near the curb with the tongue rigid and pointing northward. The horses had been unhitched and taken into the stable to be fed. Plaintiff started from her home to go to a butcher shop, walking north along the sidewalk on the east side of Eleventh street and while she was passing the wagon standing in front of the Moll stable, a wagon and team came along from the south in the street, and the wagon was so driven that its wheels

collided with the rear wheels of the Moll wagon and jostled the latter so violently its tongue was thrown around across the sidewalk and fastened under the door of the Moll stable. As the tongue swung around it struck plaintiff in the right side, knocking her into unconsciousness so she fell to the sidewalk and lay there until her father, who lived just across the street from the Moll stable and had witnessed the accident, without knowing who was hurt, came across, discovered plaintiff lying there, and with the aid of another man carried her to his residence where she was put to bed. Her injuries were serious but need not be described as there is no contention about their nature or complaint that the verdict is excessive. The testimony tends to prove two negro men were in the wagon, which collided with the stationary wagon, and the moving wagon was loaded either with manure or cinders. After the collision it was driven rapidly away to the north. It was a large yellow vehicle, without a top, with sideboards, with the words "Polar Wave Ice Company" painted on it, and drawn by a team of gray horses. There is abundant evidence in the record to show it was like wagons in use by defendant company and kept in its yard in the vicinity. Plaintiff testified she had been taking ice from defendant for a long time and knew it used wagons like the one in question; further, that no one else used that kind of a wagon. Plaintiff's father testified he was standing in his door immediately opposite the Moll stable when he "heard some wagon give a great big knock against another wagon" and saw somebody fall. After the wagon passed he went over and was surprised to see his daughter lying on the sidewalk. As soon as she had been taken across into his store, he started to stop the drivers but they had gone. This witness testified he had lived in the neighborhood for eight years and knew defendant had many wagons like the one which collided with the Moll wagon. He testified further he saw the big yellow wagon trying to pull away from the station-

ary one after he heard the noise of the collision. Three men who were eating their dinner in the second story of the Moll stable, testified they heard the collision, raised a window, looked out and saw the wagon with defendant's name on it driving away; also heard the pole of the stationary wagon strike against the door of the stable, and when they went down found the pole wedged under the door so tightly it had to be prized out with a crowbar. These witnesses did not see a woman lying on the sidewalk, nor did they see one carried across the street by two men; however one of them testified that when they got down stairs they could not get the door open and had to go around through the back door, and one testified he could not see the sidewalk from the window. One or two of these witnesses testified plaintiff's father came across the street while they were endeavoring to get the tongue from under the door, but said nothing about his daughter having been hurt. Another witness said he saw the father across the street in his store, but he did not come over to the Moll stable or that side of the street. A physician was put on the stand by defendant and testified about plaintiff's injuries, and it was admitted defendant had sent him to examine plaintiff a little more then a week after the accident, and without any proof being put in of whether or not she had made claim against defendant. At the instance of plaintiff the court instructed the jury, in effect, that if they found plaintiff was walking north on the sidewalk on the east side of Eleventh street and a wagon was standing at the time in said street near the sidewalk where plaintiff was walking, and further found one of defendant's servants and employees in charge of and driving its wagon north on said street, negligently drove and ran the wagon into and against the wagon standing in the street, and thereby and by reason of said negligence caused the pole or tongue of the stationary wagon to strike plaintiff and injure her, they should find the issues for the plaintiff. The court further instructed as

to the meaning of "ordinary care" and measure of damages. Defendant requested no instructions except one regarding the right of the jury to disregard the testimony of any witness they might believe had sworn falsely to a material fact, and another informing the jury they could not take into consideration the circumstance that the words "Polar Wave Ice Company" were on the wagon which collided with the Moll wagon, as proof of who owned the wagon bearing the words. The latter instruction was refused and the record is silent as to whether the first one was given or not. The jury returned a verdict in favor of plaintiff for three thousand, five hundred dollars and defendant appealed.

First, it is contended the court should have directed a verdict for defendant because there was no evidence tending to show the collision was due to the negligence of the persons in charge of the moving wagon. It is argued negligence cannot be inferred merely from the fact that one wagon collided with another in the street, and in support of this proposition many cases have been cited, but we think they are not in point. They either assert the general doctrine that the party alleging negligence must prove it, or, in so far as they are analogous to the present case, deal with accidents due to runaway teams or collisions where both vehicles were moving toward each other on a thoroughfare. Most decisions sustain the proposition that negligence cannot be inferred merely from the fact a team or horse ran away and caused damage, because runaways occur from the fright of horses when those in charge of them are not at fault but in the exercise of reasonable care. [O'Brien v. Miller, 60 Conn. 214; Bennett v. Ford, 47 Ind. 264; Shawhan v. Clark, 24 La. 390; Broult v. Hanson, 158 Mass. 17; Britton v. Frick, 51 Conn. 342; Gray v. Thompson, 15 N. Y. Supp. 453.] In our judgment the conclusion the team in question was driven negligently is nearly irresistible from the facts before us. The Moll wagon was standing by the curb and the street was of

ample width for a team and vehicle to pass it, yet the parties in charge of the colliding wagon ran into it in daylight with great violence and then hurriedly drove on. None of the witnesses received the impression the team was running away and there is no evidence to prove it was. It is argued the horses may have become suddenly frightened at some object in the street and have swerved out of their course without the driver being able to control them; the Moll wagon may have been standing where the street was not level and the jolting of the moving wagon may have caused it to roll down the incline, thereby producing the collision; dust may have blown into the eyes of the driver of the moving wagon so he could not see to guide his horses. We do not understand the rule to be that the negligence of a defendant can be inferred as the cause of an accident from the facts of the occurrence only when all other possible causes are excluded. It is conceivable in practically every instance the accident might, within the range of possibility, have been due to something else. If the instrumentality which did the damage was under the management of a person, and the accident was such as does not happen in the ordinary course of events if the instrumentality which caused it is handled with due care, the inference of negligence may be drawn from the testimony. [Dougherty v. Railroad, 81 Mo. 325; Shuler v. Railroad, 87 Mo. App. 623; 2 Cooley, Torts (4 Ed.), 1424.] Answering the argument of counsel for defendant, we remark that a sudden swerve by the team so as to bring the wagon they were pulling into collision with the standing wagon, would not have been apt to swing the rear of the latter wagon around so as to throw its tongue across the sidewalk. To accomplish this result required a northward impulse of so great force as hardly could have been imparted in the swing of the moving wagon out of its route; whereas it could have been by the right wheels of said wagon catching the left rear wheels of the standing one. That the street

might have been inclined toward the middle instead of from the middle toward the curb or gutter, is highly improbable, and it is equally improbable the driver was so blinded by dust as to cause him not to see objects ahead of him; but the circumstances of the collision indicated careless driving with sufficient cogency to make a prima-facie case and require counter evidence to show the driver of the team was without fault.

Neither do we accept the contention that the physical facts prove plaintiff could not have been struck and hurt by the tongue of the stationary wagon. This was by no means an impossible incident, and though she testified the tongue hit her on the right side as it swung around from the left, it may have happened she was facing obliquely at the moment and so her right side was inclined slightly west of north, thereby exposing it to a blow from the tongue more than her breast or left side was exposed.

Counsel for defendant assert no case was made by plaintiff because she offered no proof the wagon and team belonged to defendant or was in charge of its servants or, if those two facts were established, that the servants were acting in the scope of their duties at the time of the collision. In the same connection error is assigned for letting it be proved the words "Polar Wave Ice Company" were on the moving wagon, and in support of this assignment we are cited to McMullen v. Hoyt, 2 Daly (N. Y.) 271, a case wherein it appeared the plaintiff had been hurt by being struck by a barrel of flour rolled from a truck in front of the store of the defendants along a skid which extended from the truck to the store. The plaintiff testified he noticed the initials of the defendants' firm on the truck, and instead of the admission of this evidence being held error, it was treated as a circumstance going to prove the truck belonged to the defendants and that the truckman who rolled the barrel was their servant. It is true the court said the mere fact of the initial being on the cart would

not make the defendants liable, nor would the fact that they were the owners of the vehicle, unless it was driven or controlled by some person in their service; but as regards the bit of evidence in question, the opinion treated it as relevant. The defendants had moved for a nonsuit "on the ground that the relation of master and servant between defendants and the truckman had not been established." This motion was denied by the court below and the upper court held correctly denied at the time it was made, that is, at the close of the testimony for the plaintiff; though it was held further, the evidence put in by the defendants showed the truckman was not in their employ, but was an independent contractor and owned the truck, horses and skid himself. However, in dealing with the propriety of refusing the nonsuit to the plaintiff at the close of his case, the court said: "There was some evidence on the subject, slight indeed, but it tended somewhat to show that the truckman was servant to the defendants. It appeared that the initials of the defendants' names were on the cart; it was unloaded before the defendants' store, and the barrels were rolled over the skid to the store, and were then received by defendants' clerks, and one of the defendants had used the expression 'my carmen' to plaintiff when addressed on the subject of the injury. This was some evidence for the consideration of the jury on the subject as to whether the defendants were not liable for the injury, and where there is any evidence the judge is not warranted in nonsuiting. [Labar v. Keplin, 4 N. Y. 547.]" In Schulte v. Holliday, 54 Mich. 73, an exception was saved to the admission of testimony to prove the defendant's name was on the wagon which injured the plaintiff by a collision with a wagon she was in. It was held there was no error in admitting the testimony. Other cases will be cited wherein the like evidence was held competent on the question of the sufficiency of the evidence to prove the wagon which occasioned the injury to the plaintiff was in charge of the defendant's ser-

vants and they were acting in the course of their employment at the time. On the authority of the cases already cited and those to be cited, we rule the court rightly permitted the name on the wagon to be proved. And while perhaps proof of that fact alone would carry to the jury the issue of defendant's liability, yet other facts were in proof and relevant to the issue. The wagon not only bore the name of defendant, but was similar to many wagons used in its business and seen in its yard in the immediate vicinity of the accident. The wagon was coming from the direction of said yard at the time; no other concern used similar wagons, some of the witnesses testified; defendant offered no evidence to prove the wagon did not belong to it, was not in charge of its servants, or, if it was, that the servants were not in the performance of a task for defendant at the time, but engaged upon some purpose of their own. Then, there is the fact of defendant sending the physician to examine plaintiff and ascertain the extent of her injury. The adequacy of evidence less cogent to make a prima-facie case of liability has been upheld by the courts of New York and Massachusetts, declared by text writers and never denied, we believe, by any court. In Birnbaum v. Lord, 7 Misc. Rep. N. Y. 493, the action was for negligence on the part of the driver of the defendants' vehicle in running over the plaintiff, a boy twelve years old, while he was crossing a street. The court ruled thus on a point relevant to the matter in hand: "As to the proof of ownership of the wagon, the defendants' name was on the wagon and there was no pretense of evidence on the trial that it did not belong to them. No witness was called by them on that point, although the proof of the fact, if it existed, must be deemed to be in defendants' possession; all presumptions on that point were therefore against them. [Wennerstrom v. Kelly, 7 Misc. Rep. 173, 27 N. Y. Supp. 326.] The ownership of the wagon and the agency of the driver were, therefore questions for the jury." In

Ferguson v. Ehret, 14 Misc. Rep. N. Y. 454, a collision case like the one in hand, the court said: "There was certainly evidence showing that a wagon bearing upon it the defendant's name and business address did collide with Hoeffler's wagon, which in turn and because of such collision, was forced over against plaintiff's wagon, breaking it, throwing him out and against the sidewalk, from which he suffered the injuries related by him. Such testimony certainly authorized the jury in finding that said wagon was one owned by defendant." The case of Spitzer v. Express Co., 20 Misc. N. Y. 327, was to recover for injuries inflicted on the infant plaintiff by a wagon alleged to belong to the defendant and to have been driven by it or its employees. On appeal the defendant insisted the uncontradicted evidence showed the driver of the wagon was not in the employ of the defendant at the time of the accident. This driver worked for two express companies which delivered newspapers and kept their horses and wagons in the same place. He testified he drove for the defendant in the morning and for the other company in the afternoon. Nevertheless it was held a question for the jury whether he was using the defendant's wagon with its authority in the afternoon, as it appeared the defendant's name was on the wagon. It was "conceded that by this fact a prima facie case was made out against the defendant on the issue of the ownership of the wagon and the employment of the driver;" but it was contended the other evidence conclusively disproved the prima facie case. As said, the court overruled this contention. In Diel v. Brewing Co., 30 App. Div. (N. Y.) 291, the plaintiff sued for damages caused by his tripping over some skids lying on the sidewalk immediately beside a wagon which stood at the curb and had on it the name of the defendant. The defense was the wagon was not in the control of the defendant's servants. The court said the only question argued on the appeal was the

sufficiency of the evidence to connect the defendant with the control of the wagon, it being conceded the presence of its name on the vehicle was prima facie evidence the vehicle "was owned by it and in its service." As in the previous case this item of evidence was not held to have been conclusively rebutted by evidence to the contrary, but on an examination of said evidence the court held the whole issue was for the jury. In Tuomey v. Fogarty Co., 22 N. Y. Supp. 930, the defendant was charged with having permitted a cellar entrance to remain uncovered by a sidewalk while defendant's servants were engaged in delivering barrels of ale, into which opening plaintiff fell without her fault. Other points were discussed, but we are concerned only with the concluding paragraph of the opinion: "The complaint alleged that the appellant defendant was at the time of plaintiff's injury engaged in the brewing business in the city of New York, and owned trucks and horses, and employed drivers and assistants, in and about its business. This was not denied by the answer, and must therefore be taken as admitted (Code, Civil Proc., sec. 522) ; and the admission, with the evidence that the truck from which the ale was being delivered at the time of plaintiff's injury bore the name of 'O'Reilly, Skelly & Fogarty,' coupled with appellant defendant's refusal to disprove its ownership thereof, and the employment of the men assisting in the delivery of the ale, on the trial, was sufficient to sustain a finding that the truck was the property of appellant defendant, and the men its servants and employees. [Seaman v. Koehler, 122 N. Y. 646, 25 N. E. Rep. 353; Wylde v. Railroad Co., 53 N. Y. 156.]" To the like effect is Baldwin v. Abraham, 67 N. Y. Supp. 1079. In Perlstein v. Express Co., 177 Mass. 530, the plaintiff alleged damages due to the defendant's servant having driven an express wagon belonging to the defendant against the plaintiff's wagon on a street in Boston. The collision was proved and the defendant offered in defense to show

the routes traveled by its express wagons in the city, what men were employed on them and where it was the duty of each to go on the day of the accident, for the purpose of proving none of them was authorized to go past the corner where the accident occurred, and hence the driver, if there with his team, was not in the course of his employment. This evidence was rejected, the judge ruling the defendant might show its men were not at the point, but could not show where they should have been. On appeal the court above held the evidence was incompetent for the purpose of proving the wagon referred to was not one of defendant's wagons; then said: "But it was a part of the plaintiff's case to prove that the negligent driver was a servant of the defendant, acting within the scope of his employment at the time of the accident. To prove this he relied upon the inference that a person driving such a team as was described, the wagon being marked 'American Express Company' was one of the defendant's servants then engaged in the defendant's business. If the routes prescribed for the defendant's servants were such that at this time none of them could be driving through that part of Harrison avenue without, for the time, abandoning the service in which he was engaged and going off for some purpose of his own, the defendant would not be liable, even if the team which is said to have caused the collision was one of its teams, and was driven by a person who was regularly employed in its service. The question for the jury was not whether the defendant owned the team, but whether the person who was driving it negligently was then acting for the defendant in doing the work which he was directed to do. If the servant was not then acting in the course of his employment, but was off 'on a frolic of his own' the master would not be liable (citing cases). As bearing upon this question the defendant offered to show by the person who had charge of the drivers and helpers, the team service in Boston, that no driver of an express team of the de-

fendant had a right to be there that morning in the
course of his employment. We are of opinion that the
evidence was competent." The effect of said opinion
is that the plaintiff by proving the wagon was branded
with the defendant's name, established prima facie the
driver was a servant of defendant and acting within
the scope of his employment at the time. And so in
Diel v. Brewing Co., supra, it was held the name of the
defendant on the wagon was prima facie proof of own-
ership and that the wagon was in charge of the defend-
ant's servants. And in Spitzer v. Express Co., supra,
it was said that if a certain driver was driving the
wagon of the defendant at the time of the accident, the
reasonable inference was he did so by the authority of
the company. See further as to brands being evidence
of ownership: Wigmore, Evidence, sec. 150; People
v. Ballinger, 71 Cal. 17; State v. Wolfley (Kas.), 89
Pac. 1046, and cases cited in opinion; Queen v. For-
syth, 4 N. W. Terr. 398. A standard treatise states the
following doctrine and cites cases in support of it:
"When the plaintiff has suffered injury from the neg-
ligent management of a vehicle, such as a boat, car or
carriage, it is sufficient prima facie evidence that the
negligence was imputable to the defendant, to show that
he was the owner of the thing, without proving affirm-
atively that the person in charge was the defendant's
servant. It lies with the defendant to show that the
person in charge was not his servant, leaving him to
show, if he can, that the property was not under his
control at the time and that the accident was occasioned
by the fault of a stranger, an independent contractor,
or other person for whose negligence the owner would
not be answerable." [1 Shear. & Red. Neg., sec. 158.]
Note 1 to that text reads: "Proof of defendant's own-
ership of a wagon is prima facie evidence to charge him
with responsibility for its management," citing Norris
v. Kohler, 41 N. Y. 42; see Boniface v. Relyea, 6 Robt.
397; Svenson v. Atlantic Mail S. S. Co., 57 N. Y. 108;

affirming 33 N. Y. Superior Ct. 277. Another treatise says: "Ordinarily evidence that the property, mismanagement of which caused the injury, was owned by and in the control of defendant, is prima facie evidence that the negligence was imputable to him . . . Ownership and possession may each be proved by direct testimony of a witness to the fact, subject, of course, to cross-examination. . . . a signboard is competent, but not necessarily sufficient." [Abbott, Trial Evidence, 735.] Still another treatise reads: "Evidence that the truck which struck the plaintiff bore the name of the defendant's firm, has been held to make out a prima facie case that the truck belonged to them and the driver in charge of it was its servant, where it failed to deny. ownership." [6 Thompson, Neg., sec. 7659.] The same doctrine is thus declared in an encyclopedia: "It will be presumed that trains running on a railroad track are operated by the owner of the track. Similarly, delivery wagons are presumed to belong to and to be operated by the persons whose business names are upon them." [22 Am. and Eng. Ency. Law (2 Ed.), 1278.] Enlightened by those authorities we cannot doubt sufficient evidence was introduced by plaintiff to establish prima facie the wagon which caused her injury was owned by defendant, was in charge of its servants and they were engaged in defendant's service when the collision happened. Testimony was put in by defendant, but none was offered by it touching those issues, though it would seem to have been easy for defendant to prove it did not own the wagon or was not operating it by its servants, or they were not in the performance of their duty, if such was the fact.

The doubtful point on the appeal relates to the main instruction granted for plaintiff, which was drawn to embrace all the elements essential to recovery, but omitted one, namely, that the men in charge of the wagon, if found to be employees of defendant, were engaged at the time in a task pertaining to their employ-

ment and were not in the pursuit of their own business or pleasure. [Garetzen v. Duenckel, 50 Mo. 104; Milton v. Railroad, 193 Mo. 46, 57, 91 S. W. 49; Chicago Herald Co. v. Bryan, 195 Mo. 574, 92 S. W. 906; Wahl v. Transit Co., 203 Mo. 261, 272, 101 S. W. 1.] We have held the evidence for plaintiff so far established all the issues, including those of ownership of the wagon and team, its control by defendant's servants, and whether they were doing defendant's work, as to make a prima facie case. But it was for the jury to find upon the questions enumerated as well as the questions of whether the wagon and team were carelessly driven, plaintiff was hurt in consequence, what injuries she suffered, and what damages should be awarded. In this case the proof was not conclusive enough in support of either side of any contested issue to warrant its withdrawal from the jury's consideration by directing them how they should find on it, or by assuming it was settled in favor of one of the parties and omitting to require a finding on it, as has been done sometimes. Though defendant offered no evidence in relation to the ownership of the wagon and team, who was in charge of them and for what purpose, it contested those matters throughout, and did not try the case on a theory that excused plaintiff from proving the facts were as she contended, as did the defendant in Wahl v. Transit Co., supra. The evidence for plaintiff touching said questions was far from cogent and only sufficient to permit inferences by the jury. The party against whom such evidence is introduced is entitled to have the jury weigh it and find from it what they deem were probably the facts. See Gregory v. Chambers, 78 Mo. 294, where the subject was treated and the cases reviewed; also Schroeder v. Railroad, 108 Mo. 322, 18 S. W. 1090, and Gannon v. Gaslight Co., 145 Mo. 502, 46 S. W. 968. It is argued defendant was called on to prove that if the men in the wagon were its servants, they were not in the course of duty at the time. This issue cannot be

separated upon principle, from the issues of defendant's ownership of the wagon and team and control of them through its servants. Plaintiff carried the burden of proof as to the three matters and sustained it by the evidence she put in, but not beyond just inferences by reasonable minds against her; and this is the more true as regards the errand of the men in the wagon, because the contents of the wagon did not tend, without explanation, to prove the errand was connected with defendant's business. It is true the courts have held defendants in like cases are called on to exonerate themselves by testimony to show the culpable persons were not their employees, or were not in the line of their duty when their careless doing led to an accident, and have said those facts would be presumed. But we understand the courts to mean it is incumbent on a defendant to show those facts in defense after the plaintiff has shown prima facie to the contrary, and that the word "presumed" is used in the sense of "inferred," and, moreover, not to signify the inference was compulsory, but only that it might be made by the jury. We do not understand it to be meant the plaintiff has no burden of proof as to said issues in the first instance. The existence of said facts is essential to his right to a verdict, and he carries the burden of proving them as he does of proving any other essential fact. Though the courts have said the burden of proof is on the defendant as to such an issue, we conclude they meant the burden of evidence shifts when the plaintiff has introduced evidence on his side from which the jury may make a finding (see 16 Cyc. 926). The instruction under review required the jury to find only that the wagon and team were in charge of and driven by defendant's servants, which fell short of requiring them to find the servants were engaged at the time in the course of their employment. The case of Louisville Water Co. v. Phillips, Admr. (Ky.), 89 S. W. 700, cited by counsel for plaintiff is against their position, for the

instruction there considered told the jury they must find the death of the deceased was caused by the negligence of the defendant's servants "while in the service of the defendant." Besides, the court refused to reverse because the defendant had asked a charge in similar words, criticising as unsatisfactory the charge for which error was assigned.

The judgment is reversed and the cause remanded. All concur.