KELLOGG v. PAYNE.

21 575
97 516

1. Principal and agent: MASTER AND SERVANT: RESPONDEAT SUPERIOR. It is the relationship of principal and agent, or master and servant, that creates the liability of the superior, and not the fact of a resulting benefit to him from the labor, work or act being done. The employee is not liable to a third party for damages resulting from the negligent manner in which work is done by a contractor, nor is a landlord liable for such negligence by a tenant, if the relation of principal and agent or master and servant does not exist.

*Appeal from Fremont District Court.*

FRIDAY, DECEMBER 28.

THIS is a suit to recover damages from fire, alleged to have been wrongfully, carelessly and negligently set out by the servants or employees of the defendant. The cause was tried to a jury, and a verdict returned for plaintiff for three hundred and thirty dollars. Motion for a new trial was overruled, and judgment rendered on the verdict. The defendant appeals.

*Robert Percival* for the appellant.

*J. A. Harvey* for the appellee.

COLE, J.—The plaintiff is the owner of a farm on the Missouri river bottom, in Fremont county, and the defendant is the owner of another farm on the same bottom, and not far distant from the plaintiff's. In the month of October, a fire was set out near the farm of defendant, and getting beyond the control of those setting it out, reached the premises of plaintiff and did the damage sued for.

1. PRINCIPAL AND AGENT: master and servant: respondeat superior.

There is no question made in this court, by appellant's counsel, except as to the correctness of two instructions, given by the court to the jury, against his objections. ·

Only so much of the evidence as is necessary to show the pertinency of the several instructions asked or given, is embraced in the transcript. It seems that Payne, the defendant, was owner of the farm but did not live on it; Bentley, the witness, was a tenant of a part of the defendant's farm and sometimes acted as his agent; and Copeland (who was also a witness) was in the employ of Bentley, and set out the fire which caused the damage. The testimony of Bentley, in part, tending to show the application of the instructions complained of, was as follows: " I hired Copeland and paid him. It was my business to protect the north line of fence (this was where the fire was set out). Copeland was working for me when the fire was set out. I had the use of that north farm that year and was to protect it. When Mr. Payne wanted any thing done he would write to me, or give me instructions. I never did any thing of Payne's business otherwise than by instructions from him."

The two instructions of which appellant's counsel complains are as follows: " If Payne left Bentley to look after his farm and business connected with it, such as hiring, controlling hands, and protecting his farm, Bentley was his agent, and for his acts Payne is liable, if done within the scope of his authority; that is, if acting for the protection or benefit of Payne's farm."

" If Bentley had taken a contract to protect Payne's farm from fire by · burning around it, and receives his pay for that labor either in the use of a part of the farm or in any other way, the work being for the benefit of Payne, by the protection of his farm from liability to fire, he (Bentley) is to be considered as the servant of Payne, and Payne is liable for any injury to third per-

sons, caused by negligence or want of care while doing that work."

· The principle embodied in both the instructions, but more clearly and pertinently stated in the last, is, that the proprietor, or person for whose benefit any work is being done, is liable for injuries to third persons, occasioned by the negligence of the servants of the person actually engaged in executing the whole work, under a contract for that purpose. This principle was recognized and adopted by the court in *Bush* v. *Steinman* (1 Bos. and Pull., 409). That case was in substance this: A, having a house by the roadside, contracted with B to repair it for a stipulated price; B contracted with C to do the work, and C with D to furnish the materials. The servant of D brought some lime to the house and placed it in the road, by which the plaintiff's carriage was overturned. It was held that A was liable for the damage sustained. Lord Chief Justice EYRE delivered the opinion of the court, and expressly said therein that he found great difficulty in stating the precise principle on which the action could be supported. Lord ELLENBOROUGH, at *nisi prius*, followed the case of *Bush* v. *Steinman* in the case of *Sly* v. *Edgely* (6 Esp., 6). It was also cited and indirectly followed, without express approval, however, by the Chancellor (WALWORTH) and HAND, Senator, in the case of *The Mayor, &c., of New York* v. *Bailey* (2 Denio, 433). The judgment of the court was in accordance with the opinion of the chancellor. But the doctrine of *Bush* v. *Steinman* is not now recognized as sound law. To hold that a person is liable for all the damages resulting from the carelessness or negligence of all the servants or employees engaged in work for his benefit, although employed by contractors without his knowledge or consent, and without any right or ability on his part to control or discharge them, might ruin any man in the

world; and it certainly would, in the language of Lord TENTERDEN in *Quarman* v. *Bennet et al.* (6 Mees. & Wels., 497), "shock the common sense of all men." The doctrine of *respondeat superior* ought not, and cannot in this country, be carried to that extent.

· We cannot better express what we regard and hold as the true rule of law on this subject, than in the language of MULLIN, J., in delivering the opinion of the Court of Appeals of New York, in the case of *Blake* v. *Ferris*, 5 N. Y. (1 Seld.), 48. "The rule of *respondeat superior*, as its terms imply, belongs to the relation of superior and subordinate, and is applicable to that relation wherever it exists, whether between principal and agent, or master and servant, and to the subjects to which that relation extends, and is co-extensive with it, and ceases when the relation itself ceases to exist. It is founded on the power which the superior has a right to exercise over the acts of his subordinates. Therefore the rule cannot be applicable to cases where no such power exists." See also opinion *per* LITTLEDALE, J., in *Laugher* v. *Pointer*, 5 Barn. & Cress., 560; *Milligan* v. *Wedge*, 12 Adol. & Ellis, 737; *Quarman* v. *Bennet et al.*, *supra* ; *Rapson* v. *Corbitt*, 9 Mees. & Wels., 709 ; *Hobbitt* v. *The Northwestern Railway Company*, 4 Welsby, Hurlst. & Gor., 254; *Stone* v. *Codman*, 15 Pick., 297; *Stevens* v. *Armstrong*, 6 N. Y. (2 Seld.), 435; *Kelly* v. *The Mayor, etc., of New York*, 11 N. Y. (1 Kern.), 432; *Pack* v. *The Mayor, etc., of New York*, 8 Id. (4 Seld.), 222.

It is the fact of the relationship of principal and agent or master and servant that creates the liability of the superior, and not the fact of a resulting benefit to him from the labor, work or act being done. This relationship is the base whereon the doctrine of *respondeat superior* rests. Of course, if a person employ another, although by express and independent contract, to erect

a nuisance, or do any other work directly or necessarily injurious to a third person, he will be liable to such third person for damages resulting from the nuisance, or work. But this liability rests upon the idea that he is a *co-trespasser*, by reason of his directing or participating in the work done, and not on the principle of *respondeat superior*. If a responsible proprietor, having a work to perform, the execution of which would be necessarily attended with danger and probable injury to third persons, should let the doing of the work by contract, to an irreponsible party *with the view and for the purpose of avoiding personal liability* for any damages that might result from its execution in the manner required, we will not say that such proprietor would not be liable for such damage. But his liability, in such case, if it existed at all, might well be held to rest upon the fraud or *mala fides* of such proprietor.

As applied to this case, then, the rule of law is, that, "if Bentley had taken a contract to protect Payne's farm from fire" Bentley and not Payne is liable for any damages resulting to the plaintiff by reason of the careless or negligent manner in which the contract was performed by Bentley or his servant.

Bentley, in such case, is *not* "to be considered as the servant of Payne," although "the work was being done for the benefit of Payne." If, however, Bentley was the agent or servant of Payne in the doing of the work or act which caused the injury, then Payne is liable.

Whether he was such servant or agent, is a fact to be determined by the jury, under the law to be given by the court. But the fact that Bentley was doing the work by contract or as a tenant of Payne, will not make him either the agent or servant of Payne, although the work being done was for his benefit.

Reversed.