## ROBBINS ET AL. *v.* BRAZIL SYNDICATE R. AND B. COMPANY.

### [No. 9,174. Filed January 3, 1917.]

1. SALES.—*Delivery to Carrier.—Effect.*—Where goods are bought at one place to be consigned and transported to the purchaser at another place, it is the general rule, in the absence of a contrary arrangement, that delivery by the seller to a common carrier is a delivery to the purchaser, since the carrier thereby becomes the agent of the purchaser and title to the property passes to him at the time of such delivery. p. 460.

2. SALES.—*Delivery to Carrier.—Effect.—Right of Inspection.*—The right of inspection, in the absence of any established custom or agreement to the contrary, does not prevent the title from passing to the purchaser on delivery to the carrier of goods duly consigned to the purchaser; but if, on inspection the goods are

not found to be such as were purchased, that fact may authorize a rescission of the contract for sale.  p. 461.

3.  SALES.—*Delivery to Carrier.—Effect.—Recovery of Purchase Price.*—If goods are sold to be delivered by the seller at the residence or place of business of the purchaser, a delivery to the carrier is not a delivery to the purchaser, since in such case the carrier is the agent of the seller, and failure to deliver the goods to the purchaser according to the terms of the sale will defeat recovery of the purchase price of the goods.  p. 461.

4.  SALES.—*Contract.—Construction.—Action for Purchase Price.*— Where, in an action to recover the purchase price of goods sold, plaintiff relies on a contract made up of letters and telegrams, effect must be given to all parts of the contract alleged, if it can be done without doing violence to the evident intention of the parties, as ascertained from a consideration of all portions of the writings.  p. 463.

5.  CONTRACTS.—*Contracts in Writing.—Construction.—Intention.*— Where a contract is in writing and the language employed is unambiguous, it must be so interpreted as to carry into effect the intention of the parties as expressed by the writings.  p. 463.

6.  CONTRACTS.—*Contracts in Writing.—Ambiguities.—Intention.— Parol Evidence.*—If the language, or any portion thereof, used in a written contract is ambiguous or of uncertain meaning or application, parol evidence may be heard not to vary or contradict the writings, but to ascertain the sense in which the language was used and its application to the subject-matter of the contract, to determine the true intention of the parties at the time the contract was entered into, and, in ascertaining such intention, the court will, if necessary, consider the relation and situation of the parties, the character of the transaction and all the surroundings and conditions attending the execution of the contract.  p. 463.

7.  SALES. — *Contract. — Construction. — Certainty. — Action to Recover Purchase Price.—Answer.—Sufficiency.*—Where, in an action to recover the purchase price of goods sold, plaintiff alleged a contract consisting of letters and telegrams, wherein defendant wrote "Quote us 25-50's Santos 4's same as last," and plaintiff wired "Santos fours sixteen and half subject to return confirmation," and defendant then replied by telegram, "Ship twenty-five fifties Santos fours at quotation," such contract is so ambiguous, especially the meaning of the phrase "same as last", that parol evidence must be resorted to in order to ascertain the interpretation to be placed on the contract; hence an answer averring that the words "same as last" had a special meaning established by prior dealings between the parties and was understood as signifying delivery at the city where defendants resided, with

the right to inspect the goods, and that delivery was not so made, is sufficient as against demurrer.   p. 464.

From Decatur Circuit Court; *Hugh Wickens,* Judge.

Action by the Brazil R. and B. Company against Will H. Robbins and Charles H. Johnston, doing business under the firm name of W. H. Robbins & Company.   From a judgment for plaintiff, the defendants appeal.   *Reversed.*

*George L. Tremain* and *Rollin A. Turner,* for appellants. *Thomas E. Davidson,* for appellee.

Felt, C. J.—This action was brought by appellee against appellants, Will H. Robbins and Charles H. Johnston, doing business under the firm name of W. H. Robbins & Co., to recover the purchase price of 1,250 pounds of coffee alleged to have been sold to appellants by appellee.   The demurrer to the amended second paragraph of complaint for insufficiency of facts was overruled.   Appellants filed an amended second paragraph and an additional third paragraph of answer to the amended second paragraph of complaint.   Appellee demurred to each of such paragraphs of answer for insufficiency of facts alleged to constitute a defense to its cause of action and each of such demurrers was sustained.   Thereupon appellee withdrew its first paragraph of complaint and appellants withdrew their first paragraph of answer.   Appellants failed and refused to plead further and elected to stand on their said answers and the rulings of the court on the demurrers thereto, and the court rendered judgment for appellee against appellants in the sum of $207.50.

From this judgment appellants appealed and have assigned as error the overruling of their demurrer to the amended second paragraph of complaint, the sustaining of appellee's separate demurrer to the second amended and the additional third paragraph of appellants' answer.

Omitting formal and unquestioned allegations, the complaint is, in substance, as follows: Appellee was a whole-

sale dealer in coffee in the city of New York and among the brands of coffee sold by it to dealers was that known as "Santos 4'S," which was sold in bags of fifty pounds each, commonly designated to dealers as "50'S"; that appellants, Will H. Robbins and Charles H. Johnston, under the firm name of W. H. Robbins & Co., were engaged in the wholesale grocery business in Greensburg, Indiana; that in 1913 appellee entered into a written contract with appellants through the following letter and telegrams, for the sale and purchase of twenty-five bags of fifty pounds each of said "Santos 4'S," at the agreed price of sixteen and one-half cents per pound, which letter and telegrams are as follows:

Letter:

"Will H. Robbins          Charles H. Johnston
      "W. H. Robbins & Company
      Wholesale Grocers and
      Commission Merchants,
      Clover and Timothy Seed.
                    Greensburg, Indiana, 3-8, 1913.
"Brazil Syndicate, New York,
Gentlemen:
      Quote us 25-50's Santos 4's same as last.
                    Yours truly,
                          W. H. Robbins & Co.

Telegram:

                    New York, Mar. 10, 1913.
"W. H. Robbins & Co.,
      Greensburg, Indiana,
   Santos fours sixteen and half subject to return confirmation.
                    Brazil Syndicate R. & B. Co., Inc."

Telegram:

                    "Greensburg, Indiana, Mar. 10, 1913.
"Brazil Syndicate R. & B. Co. New York.
   Telegram received. Ship twenty-five fifties Santos fours at quotation.          W. H. Robbins & Co."

On March 19, 1913, in response to said letter and telegrams, appellee shipped to appellants by the usual and

ordinary routes of carriage, twenty-five bags of fifty pounds each of the coffee designated and so ordered by appellants; that the same was addressed and consigned to W. H. Robbins & Co., Greensburg, Indiana, and delivered to the Erie Railroad Company for transportation to appellants, and said railroad company accepted said coffee and undertook the delivery thereof; that appellee caused the same to be billed to appellants and mailed to them an invoice and bill of lading for the coffee so shipped as aforesaid, which invoice and bill of lading were received by appellants; that said railroad company was at said time a common carrier of goods and merchandise from the city of New York to Greensburg, Indiana, and other points; that it was understood by appellants that appellee was selling and appellants were buying twenty-five bags of fifty pounds each of coffee known as "Santos 4'S" at the agreed price of sixteen and a half cents per pound.

The memorandum accompanying the demurrer to the complaint is, in substance, as follows: The complaint does not aver that the goods sold were delivered to the purchasers; the averments do not show an unconditional purchase of the goods f. o. b. New York City; the averments do not show that the coffee shipped was the "same as last," nor do they explain the meaning of such phrase; the complaint shows that the goods were never delivered to the purchaser but were delivered to the Erie Railroad Company; the averments do not show an unconditional sale of the coffee without the right of inspection at Greensburg, Indiana, and confirmation or rejection and compliance with conditions of payment; the averments do not show that appellants received notice of the shipment or that the seller performed all the conditions of the sale to be performed by it. The theory of the complaint is that the letter and telegrams constitute a contract of sale; that appellants accepted the proposition and terms of appellee for the sale of twenty-five

bags of the brand of coffee designated, at the price quoted, and that appellee thereupon duly consigned the shipment to appellants, sent them a bill of lading therefor, and delivered the coffee to the Erie Railroad Company, a common carrier of such goods from New York to Greensburg, Indiana, for transportation and delivery to appellants, and thereby they became the owners of the coffee at the time of its delivery to the railroad company as aforesaid.

Where goods are bought at one place to be consigned and transported to the purchaser at another place, in the absence of any arrangement or agreement to the contrary, the 1. general rule is that delivery by the seller to a common carrier of such goods, duly consigned to the purchaser, is a delivery to the purchaser, for the carrier thereby becomes the agent of the purchaser and title to the property passes to him at the time of such delivery. There are exceptions to this general rule, but, in the absence of facts showing a different agreement or arrangement, the presumption is that the general rule prevails. *Pennsylvania Co.* v. *Holderman* (1879), 69 Ind. 18, 26; *Pennsylvania Co.* v. *Poor* (1885), 103 Ind. 553, 554, 3 N. E. 253; *Sohn* v. *Jervis* (1885), 101 Ind. 578, 582, 1 N. E. 73; *Butler* v. *Pittsburgh, etc., R. Co.* (1897), 18 Ind. App. 656, 660, 46 N. E. 92; *Tebbs* v. *Cleveland, etc., R. Co.* (1897), 20 Ind. App. 192, 199, 50 N. E. 486; *Kilmer* v. *Moneyweight Scale Co.* (1905), 36 Ind. App. 568, 571, 76 N. E. 271; *Hill* v. *Fruita Mercantile Co.* (1908), 42 Col. 491, 497, 94 Pac. 354, 126 Am. St. 172; *Kelsea* v. *Ramsey & Gore Mfg. Co.* (1893), 55 N. J. Law 320, 26 Atl. 907, 22 L. R. A. 415, and notes; 4 Elliott, Railroads' (2d ed.) §1414; 5 Elliott, Contracts §5042.

The general rule above stated may be changed by agreement of the seller and purchaser, either express, or implied from facts and circumstances or an established course of dealing, but the rule is not changed by a mere right of inspection to ascertain whether the goods delivered are,

in fact, such as were purchased. The right of inspection, in the absence of any established custom or agreement to the contrary, does not prevent the title from passing to the purchaser on delivery to the carrier of the goods duly consigned to the purchaser, but, if on inspection the goods are not found to be such as were purchased, that fact may authorize a rescission of the contract of sale. *Wind* v. *Iler & Co.* (1895), 93 Iowa 316, 61 N. W. 1001, 27 L. R. A. 219, 220; *Foley* v. *Felrath* (1892), 98 Ala. 176, 13 South. 485, 39 Am. St. 39; *Boothby* v. *Plaisted* (1871), 51 N. H. 436, 437, 12 Am. Rep. 140; 4 Elliott, Railroads (2d ed.) §1414; 35 Cyc 195.

If goods are sold to be delivered by the seller at the residence or place of business of the purchaser, a delivery to the carrier is not a delivery to the purchaser, for in such case the carrier is the agent of the seller and not of the purchaser. In such instance failure to deliver the goods to the purchaser according to the terms of the sale will defeat recovery of the purchase price of the goods. 2 Benjamin, Sales (1889) §1040; 35 Cyc 195, and cases cited; *Braddock Glass Co.* v. *Irwin* (1893), 152 Pa. 440, 25 Atl. 490; *McNeal* v. *Braun* (1891), 53 N. J. Law 617, 23 Atl. 687, 26 Am. St. 441; *Devine* v. *Edwards* (1881), 101 Ill. 138, 141; *Murray* v. *Nichols Mfg. Co.* (1890), 11 N. Y. Supp. 734; *Bartlett* v. *Jewett* (1884), 98 Ind. 206; *Sohn* v. *Jervis, supra.*

The amended second paragraph of answer admits the execution of the letter and telegrams set out in the complaint, but it avers that the phrase ''same as last'' in appellants' letter of March 8, 1914, had reference to a former shipment of coffee by appellee to appellants and that both parties then and there understood the same and that it had a special meaning and referred to the condition and terms of delivery and payment for said former shipment and both parties knew and understood that by the quotation asked for in said letter the coffee was to be

delivered to the purchasers in Greensburg, Indiana, as former shipments had been delivered, and that "Santos 4'S" was a standard grade of coffee quoted and sold generally on the market and was so designated by all dealers in coffee; that in November, 1912, a shipment of such coffee was made to appellants upon the express agreement that said coffee should be delivered to appellants at Greensburg, Indiana, and there to be examined by them and, if satisfactory, to be accepted and paid for within ninety days from the date of such delivery to them in Greensburg, and such former shipment was delivered to and paid for by appellants on such conditions; that in January, 1913, appellants made another similar purchase and the same was shipped, examined, accepted and paid for within ninety days from the date of delivery in Greensburg, under the aforesaid terms and conditions; that when the purchase was made in November, 1912, as aforesaid, it was expressly agreed by and between appellants and appellee that any future purchase of coffee made by appellants should be upon the condition that the same would be delivered by appellee to appellants at Greensburg, Indiana, subject to inspection and payment as above stated; that appellee did not deliver the aforesaid purchase of coffee of March 10, 1913, or any part thereof, to appellants in Greensburg, Indiana, and the same has never been delivered to them. The third paragraph of answer is substantially the same as the amended second paragraph.

The gist of the memoranda accompanying the demurrers to the special answers is that the answers do not show that the contract of sale is indefinite, uncertain or ambiguous; that the meaning of the phrase "same as last" is not uncertain, indefinite, or ambiguous, when read in connection with the whole contract set out in the complaint.

Accepting the theory of the complaint as indicated by its general tenor, the contract of sale must be determined by a consideration of the letter and telegrams set out therein

in the light of the other averments, and in so doing
4. effect must be given to all parts thereof if it can be done reasonably without doing violence to the evident intention of the parties as ascertained from a due consideration of all portions of the writings. Where the contract is in writing and the language employed
5. is unambiguous, it is a cardinal rule of construction that it shall be so interpreted as to carry into effect the intention of the parties as expressed by the writings.
If the language or any portion thereof is ambiguous
6. or of uncertain meaning or application, parol evidence may be heard, not to vary or contradict the writings, but to ascertain the sense in which the language was used and its application to the subject-matter of the contract, to arrive at the true intention of the parties at the time the contract was entered into. In ascertaining such intention the court will, if necessary, consider the relation and situation of the parties, the character of the transaction and all the surroundings and conditions attending the execution of the contract. *Warrum* v. *White* (1908), 171 Ind. 574, 577, 86 N. E. 959; *Hitz* v. *Warner* (1910), 47 Ind. App. 612, 618, 93 N. E. 1005; *Chapman* v. *Lambert* (1911), 176 Ind. 461, 467, 96 N. E. 459; *Olds Wagon Works* v. *Coombs* (1890), 124 Ind. 62, 65, 24 N. E. 589; *Martindale* v. *Parsons* (1884), 98 Ind. 174, 179; *Leiter* v. *Emmons* (1897), 20 Ind. App. 22, 25, 50 N. E. 40; *Thomas* v. *Troxel* (1900), 26 Ind. App. 322, 327, 59 N. E. 683; *Kann* v. *Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513.

In *Olds Wagon Works* v. *Coombs, supra,* (p. 65) Judge Mitchell used language appropriate to the case at bar, viz.: "In interpreting a contract the language employed therein is the exclusive medium through which to ascertain its meaning; but in case the terms employed are ambiguous, or susceptible of more than one meaning, the situation of the parties and the circumstances under which the contract was made may become a proper subject of inquiry in order to

arrive at the sense in which the language was employed. *Cravens* v. *Eagle Cotton Mills Co.*, 120 Ind. 6, and cases cited. This in nowise militates against the rule that the meaning of the parties is to be ascertained from the language used in the writing, and that the interpretation of the instrument is a duty resting upon the court. The court may, however, in a proper case, direct the jury that the instrument may mean one thing or the other, depending upon extraneous circumstances to be found by them from the evidence.''

In *Leiter* v. *Emmons, supra,* (p. 25) this court, by Robinson, C. J., said: ''As it was a contract made with reference to a particular business, it is presumed that it was made with reference to the ordinary course of such business. In such case it would be proper to consider the general and known course of business of appellants. While it is true that usage cannot control an express contract, yet where a contract is ambiguous, the presumption is that it was made with reference to the known usage or general course of the particular business. In such case the question becomes one of fact to be determined as any other question of fact.''

In our view the contract under consideration is ambiguous and especially the phrase ''same as last'' in the letter of March 8, 1913. This phrase is susceptible of more than one meaning. It was used by appellants in connection with a particular business, and was addressed to appellee with whom the answer shows appellants had established a course of dealing in which the phrase so used may have been understood by all the parties to have the meaning alleged in the answer. In such instance the previous established course of dealing and agreements between the parties, their situation and the circumstances under which the contract was made, became proper subjects of inquiry to ascertain the application of the phrase and the sense in which the language was employed.

If, as alleged in the answer, appellee undertook to deliver

the goods to appellants at Greensburg, the shipment would not be controlled by the general rule above announced, and failure to so deliver them would be a complete defense to appellee's suit. We therefore hold that each of the special answers states a defense to the cause of action alleged in the complaint and it was error to sustain the demurrers thereto.

The judgment is reversed, with instructions to overrule each of the demurrers to the special answers, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 114 N. E. 707. Sales, delivery of goods to carrier as delivery to purchasers, 20 Ann. Cas. 1027; Ann. Cas. 1916A 1046; 35 Cyc 193. See under (2) 35 Cyc 289; (3) 35 Cyc 195; (4) 35 Cyc 97; (5) 9 Cyc 577.