## Polk Sanitary Milk Company *v.* Qualiza.

[No. 13,762. Filed September 8, 1930. Rehearing denied November 14, 1930. Transfer denied January 7, 1931.]

*Bingham, Mendenhall & Bingham,* for appellant.
*Clyde P. Miller* and *Frank K. Martino,* for appellee.

NICHOLS, J.—Action for damages for alleged personal injuries sustained by appellee due to the alleged negligence of appellant. It is averred in the complaint that appellant was engaged in the milk, butter and milk products business and owned and operated a large number of milk wagons in delivering milk by its servants, agents and employees; that, on or about December 11, 1926, at about 6:15 o'clock a. m., appellee was lawfully and with due care riding his bicycle on Addison Street in Indianapolis, which street runs north and south and intersects with New York Street, running east and west; that while he was riding south on said street, a certain milk wagon, owned and operated by appellant and in charge of one of its employees, acting within the line and scope of his duties, was proceeding toward the south on said street; that such employee stopped such milk wagon and immediately thereupon jumped therefrom to the street and negligently and carelessly ran with great force and violence against the side of the bicycle upon which appellee was then riding, and that appellee was violently thrown off his bicycle and struck the pavement with great force and violence; that he was severely, painfully and permanently injured in that his right hip was broken, his right leg, at the hip socket was broken and fractured, and his leg was severely sprained and bruised; that, on account of his injuries, he was confined to his bed for several months thereafter and ever since said injury he has been wholly incapacitated for work and unable to earn any money for the support and maintenance of himself and his family; that, on account of said injuries, he has been permanently left lame and crippled in his right leg and hip, suffers great pain and anguish on account of said injuries, and has been compelled to expend large sums of money for medical and surgical services in treating said injuries, in the sum of $300; that, at the time appellee was injured, he was a strong, able bodied man and was earn-

ing an average of $40 a week; that said injuries were caused wholly and proximately by reason of the said negligence and unlawful act of appellant, its agent, servant and employee, while acting within the scope of his employment with appellant; that, on account of said injuries, appellee has been damaged $15,000; for which he demands judgment.

Answer in general denial. A trial by jury resulted in a verdict of $3,000 for appellee, upon which verdict the court rendered judgment. The error assigned is the court's action in overruling appellant's motion for a new trial, wherein it is properly assigned that the verdict of the jury is not sustained by sufficient evidence, that it is contrary to law, that the damages assessed are excessive, that the court erred in instructing the jury and in the admission of evidence. The court gave 19 instructions on its own motion, appellee tendered three, all of which were refused, and appellant tendered 20, of which the court gave seven and refused to give 13. It does not appear by the briefs as to whether the court gave appellant's last instruction tendered, No. 20. We do not consider it. Appellant complains that the court erred in giving its instruction No. 7 for the reason that it did not limit appellant's negligence, if any, to the negligence charged in the complaint. This is true, and if the instruction were standing alone, it would constitute substantial error, but, surrounded by other instructions given that plainly limit the negligence for which there may be a recovery to that charged in the complaint, the error, if such it be, is harmless. We have carefully examined the instructions tendered by appellant and refused, along with those given by the court, and we hold that appellant's instructions are each covered by those given by the court. Instructions given by the court were clear and concise, and correctly and fully informed the jury as to the law of the case.

Appellant contends that the evidence is insufficient to sustain the verdict for the reason that it does not appear that the vehicle involved in the accident was the ██ property of appellant, that it was being used in appellant's business, nor that the driver thereof was the servant of appellant employed at the time in the transaction of appellant's business. That there was much contradiction in the evidence, and that it cannot be reconciled, must be admitted. But that this court does not weigh evidence, and if there is any evidence to sustain the verdict, it will not be disturbed, is so well established that we need cite no authorities to sustain such a rule. Appellee has about 24 pages of corrections and additions to appellant's statement of the evidence, the greater part of which pertains to the question of appellant's connection with the accident, in which it appears that appellee testified, in substance, that he knew what company owned the wagon out of which the man came that ran into him that day, that it was a yellow wagon, that horses were dark. He saw the head of a cow on the side of the wagon and saw the name "Polk" on it. He saw this while he was lying on the street. The driver of the wagon had a heavy kind of dark brown coat on. He knew the driver was working for Polk. He saw the wagon and driver lots of times pass up and down on Addison Street and the driver pass to and from the wagon delivering milk, and saw this same driver in the court room that morning, the one who struck him down. After the driver put the milk on the front porch, he came back and bent over appellee and said "Can't you get up, Buddy?" and appellee said "no." The driver then jumped on the wagon and drove away. Appellee did not see him make any more deliveries. That was the last time appellee saw him except once in appellee's house. He saw the same wagon and driver lots of times before the day of the accident, because he went to work this way at the Link Belt for

14 years. He saw a wagon of the same color and the same team and a man of the same size. Another witness, Tony Foletich, testified, in substance, that, when the milkman came back, he said "Can't you get up Buddy?" and the witness said "What is the matter, you knock man down?" and the driver said nothing, but jumped into the wagon and drove away real fast. As soon as Qualiza fell, the driver took the milk to the house, went past, jumped into the wagon and was gone. The milkman was heavy set, not so big, looked like a young man. When witness got to Qualiza, he was lying on the pavement. He saw the head of a cow and the words "Polk Milk Company" on the wagon.

Allen B. Fulkerson (appellant's night foreman) testified that the company, in December, 1926, had some milk wagons that had only the word "Polk" on them. Now only a few of that kind. At present, the company also has other lettering on the wagons, as "The Sunlight Milk Plant." At present, there are no wagons that do not have on them "Polk Sanitary Milk Company" but there were in December, 1926. On the Vander Moere route in December, 1926, the witness thought that the wagon had nothing except "Polk Milk Company," and had a cow's head at the rear of each side. Vander Moere was the driver here involved.

Charles L. Peggs was the office manager and auditor of appellant company. He testified that Vander Moere was taken to appellee's house to find out if this man could identify him as the man who caused an alleged accident.

Bruce C. Parcels was distribution manager of appellant company. He testified that, throughout the month of December, 1926, Isaac Vander Moere was the delivery man and salesman on behalf of the company on the Addison Avenue route, known as the company's "route No. 77," that no other employee of that company

covered that territory, and that Mr. Vander Moere was there in the court room that day.

Appellee being asked if he could identify the man who jumped out of the milk wagon, and ran into him, in the court room, answered "yes." Then being told to point him out, said "I point him out. That is the right fellow right over there, that red man. He was in my house, too. That is the driver, he struck me down. That is the man. Yes."

Allen B. Fulkerson, above mentioned, testified that Vander Moere was a milk-wagon driver for appellant company on the morning of December 11, 1926. Finally Vander Moere so testified, and described the route over which he drove, which included the place of the accident. This evidence seems to us to be sufficient to justify the jury in finding by the verdict that the wagon involved belonged to appellant, that it was being used by appellant at the time of the accident by Vander Moere, appellant's servant, for the purpose of delivering milk for appellant in the due course of its business, during which time, he negligently injured appellee.

Appellant complains that appellee's counsel was guilty of misconduct in making a statement that an insurance company was defending appellant, but it does not so appear by the record.

Finally, appellant contends that the court erred in admitting in evidence, over the objection of appellant, certain X-ray exhibits. But there is no contention that appellee was not injured. On the contrary, the evidence is undisputed that he was. Such evidence, then, could only go to the extent of such injury for the purpose of fixing the amount of damages to be assessed. No question, however, is presented in appellant's Points and Authorities as to the damages being excessive.

The judgment is affirmed.