## ESTES v. ANDERSON OIL COMPANY ET AL.

[No. 13,742. Filed June 5, 1931. Rehearing denied October 1, 1931. Transfer denied November 24, 1931.]

*Joseph R. Morgan, Kane, Blain & Hollowell* and *Barnard & Jeffrey,* for appellant.

*Bagot, Free & Bagot* and *E. G. Scotten,* for appellees.

KIME, J.—A rehearing having been granted after a *per curiam* affirmance, this case is again before the court.

Suit was brought by the appellant against Anderson Oil Company and William R. Wood to recover for personal injuries arising out of an automobile collision. At the close of the plaintiff's case, appellee Anderson Oil Company filed a motion for an instructed verdict. This motion was sustained and the jury was instructed that at the proper time they would be instructed to return a verdict for Anderson Oil Company. The trial proceeded as to William R. Wood, the jury returning a verdict as against him for $5,500. Motion for a new trial was overruled and judgments entered on the verdicts. Vacation appeal properly assigning as error the action of the trial court in directing a verdict and its refusal to grant a new trial for newly discovered evidence.

Appellant contends that there existed between the appellees the relation of principal and agent, master and

servant, employer and employee or that the doctrine of *respondeat superior* applies.

The evidence, as disclosed by appellant's brief, which is unchallenged by the appellee, shows that, immediately after the accident, appellee Wood made a telephone call. That, immediately thereafter, a Mr. Jones of the Anderson Oil Company came to the scene of the accident. The evidence further shows that Mr. Jones was president of the Anderson Oil Company. That the truck had a sign "Anderson Oil Co." on it in several places. *Fleischman* v. *Ice and Fuel Co.* (1910), 148 Mo. App. 117, 127 S. W. 660; *Polk Sanitary Milk Co.* v. *Qualiza* (1930), 92 Ind. App. 72, 172 N. E. 576. The name of Wood was not on the truck. Wood said, in answer to a question: "Probably three years, seems to me as though *I worked for them* two years." He was there referring to the Anderson Oil Company. The Anderson Oil Company fixed the price at which he (Wood) could sell the gasoline. He could only sell to a territory assigned him by the Anderson Oil Company. He could not sell in any other territory. On the particular trip that this accident occurred, he was delivering an order that had been telephoned to the Anderson Oil Company direct. When a delivery was made, the purchaser did not pay Wood but would pay the Anderson Oil Company. Orders were taken on blanks of the Anderson Oil Company and charges were made on other blanks of theirs.

In the case of *Gipe* v. *Pittsburgh, etc., R. Co.* (1907), 41 Ind. App. 156, at p. 161, 82 N. E. 471, this court, by Myers, J., said: "On the question we are now considering, the burden of the issue was upon appellant, and, regarding the right of the trial court to direct a verdict, in *Westfall* v. *Wait, supra,* it is said: 'If the evidence was of such a character as to make it clear to the court that a verdict, if returned for appellant, on whom the burden of the issue rested, could not stand, then it be-

came the duty of the court to direct a verdict for appellees, and there could be no error in so doing,' citing cases. See, also, *Goode* v. *Elwood Lodge, etc.* (1903), 160 Ind. 251, 256; *Williams* v. *Resener* (1900), 25 Ind. App. 132; *Burns* v. *Smith* (1902), 29 Ind. App. 181, 94 Am. St. 268. In respect to the right of the trial judge to direct a verdict against the party on whom the burden rests, the court in *Dunnington* v. *Syfers* (1901), 157 Ind. 458, said: 'The rule to the effect that where there is a "scintilla" of evidence the trial court must permit the case to be submitted to the jury for their determination does not prevail in this State.' *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 32 L. R. A. 149; *Meyer* v. *Manhattan Life Ins. Co.* (1896), 144 Ind. 439; *Diezi* v. *Hammond Co.* (1901), 156 Ind. 583."

The Supreme Court, in *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, at p. 425, 73 N. E. 899, by Jordan, J., said: "It is a settled rule in this State that the right of the court to direct a verdict, as it did in this case, can only be upheld where, after a consideration of all the evidence most favorable to the plaintiff, together with all the reasonable and legitimate inferences which a jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to the plaintiff's right of action. *Purcell* v. *English* (1882), 86 Ind. 34, 44 Am. Rep. 255; *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385; *Wolfe* v. *McMillan* (1889), 117 Ind. 587; *Diezi* v. *Hammond Co.* (1901), 156 Ind. 583; *Wagner* v. *Weyhe* (1905), ante 177, and cases there cited."

This case was cited with approval and followed in the case of *Saylor* v. *Obendorf* (1909), 45 Ind. App. 436, 89 N. E. 600, as follows: "The question is, Did the court err in peremptorily instructing the jury? The answer to this question requires us to con-

sider the evidence, keeping in mind that this particular action of the court 'can only be upheld where, after a consideration of all the evidence most favorable to plaintiff, together with all reasonable and legitimate inferences which a jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to the plaintiff's right of action.' *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413."

The law very zealously protects one against whom a motion for a directed verdict is addressed. After saying that such motion is equivalent to a demurrer to the evidence, our courts have held that, " 'if there is a conflict in the evidence, then only such evidence as is favorable to the party against whom the demurrer is directed can be considered, and that which is favorable to the demurring party is deemed to be withdrawn.' " *Lorber* v. *Peoples Motor Coach Co.* (1928), 89 Ind. App. 139, 164 N. E. 859, 172 N. E. 526, quoting from *Curryer* v. *Oliver* (1901), 27 Ind. App. 424, 60 N. E. 364, 61 N. E. 593, and authorities there cited.

Where all the rights, duties and obligations existing between the parties are couched in a written contract, the construction and meaning of that contract is a question of law for the court and is not a question of fact for a jury to determine. *Mondamin, etc., Dairy Co.* v. *Brudi* (1904), 163 Ind. 642, 72 N. E. 643; *Robbins* v. *Spencer* (1889), 121 Ind. 594, 22 N. E. 660.

In case of ambiguity in a written contract, or in case of construction thereof by the parties themselves, disclosed by their actions and conduct in connection therewith, parol proof may be offered explaining the ambiguity, and also establishing such construction, and in such event the question of the meaning of the contract in the light of such parol evidence be-

comes a question of fact to be determined by a jury. *Robbins* v. *Brazil Syndicate, etc., Co.* (1917), 63 Ind. App. 455 at p. 463, 114 N. E. 707; *Olds Wagon Works* v. *Coombs* (1890), 124 Ind. 62, 24 N. E. 589.

But our courts have had this to say as to this rule in *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525 at p. 546, 87 N. E. 723: "The contention of counsel is that, the rule being a written instrument, it was the province of the court, and not of the jury, to interpret it. We readily concede the general rule to be as affirmed by counsel, but there are exceptions as well founded as the rule itself.

"The exception applicable here is well stated by Woods, J., in *Reissner* v. *Oxley* (1881), 80 Ind. 580, in these words: 'The right of parties to put an interpretation upon their own contracts, even to the extent of doing away, practically, with the ordinary and plain meaning of terms, cannot well be denied, so long as their interpretation does not result in a contract which for some reason is in itself unlawful. And the cases are numerous and consistent, which permit a resort to proof of the circumstances or situation of the parties, when their contract was made, and of their transactions under it, when its terms are of doubtful or ambiguous meaning, for the purpose of arriving at the true intention, and, when this is done, the question must be left to the decision of the jury substantially as was done in this instance.'

"It has repeatedly been held by this court that in cases where the writing is indefinite, or the language ambiguous, or of doubtful application, the practical interpretation given it by the parties themselves may be shown by parol, and that the construction and application given by them should be received with great, if not controlling, weight. *Gaylord* v. *City of Lafayette* (1888), 115 Ind. 423; *Ralya* v. *Atkins & Co.* (1901),

157 Ind. 331; *Burk* v. *Mead* (1902), 159 Ind. 252; *Ditchey* v. *Lee* (1906), 167 Ind. 267."

In this case the evidence consisted both of a written contract between the appellees and parol evidence of their conduct. Where there is a written contract between the alleged principal and agent, this does not necessarily govern the question, and the relation of *respondeat superior* may depend entirely upon the conduct of the parties, for persons cannot be in fact principal and agent or master and servant and the superior escape liability by going through the form of a written contract. So the court here should have considered the entire situation and all the circumstances, including the written contract, and if, from such a consideration, there was any construction which a jury could legitimately have placed thereon which would, under any view of the evidence, have warranted a verdict for the plaintiff, it was error to direct a verdict.

In the case of *Anderson* v. *Foley Bros.* (1910), 110 Minn. 151, 124 N. W. 987, the court said: "The trial court was of opinion that upon the face of the contracts Evans should be considered an independent subcontractor, and submitted to the jury the question whether the company had assumed control. The law on this subject is well settled. The contracts themselves do not necessarily govern the question, and the relation of *respondeat superior* may depend upon the conduct of the parties. *Rait* v. *New England F. & C. Co.*, 66 Minn. 76, 68 N. W. 729; *Roe* v. *Winston*, 86 Minn. 77, 90 N. W. 122; *Clagus* v. *Gillette-Herzog Mnfg. Co.*, 86 Minn. 458, 90 N. W. 1116."

See, also, *Brodwell* v. *Webster* (1915), 98 Nebr. 664, 154 N. W. 229, Ann. Cas. 1918C 624; *Dibert* v. *Giebisch* (1914), 74 Ore. 64, 144 Pac. 1184. In the latter case, the court stated the following reason for not permitting a principal or master to escape liability by the execution

of a written contract attempting to create the relation of independent contractor: "In order that the rule of *respondeat superior* may be invoked, it is important to determine who was in fact the plaintiff's employer and for whom he was laboring when he was hurt.

"If a responsible party, having work to perform, the execution of which is necessarily attended with danger, undertakes to avoid liability for injury to third persons by letting the contract to an irresponsible party, he cannot be permitted thus to take advantage of his own wrong and escape the consequences of his act, because the making of the contract may well be regarded as a fraud on his part. *Kellogg* v. *Payne,* 21 Iowa 575. . . .

"In actions to recover damages for injuries caused by the alleged negligence of the master, where the defense is that the carelessness was that of an independent contractor, a court will not hesitate carefully to scrutinize the substance of the contract and all the attending circumstances in order to determine the actual relation which the alleged master sustained to the person employed. The mere fact of nominal employment by an independent contractor will not relieve the master of liability where the servant is in fact in his employ. *Nelson* v. *American Cement Plaster Co.,* 84 Kans. 797 (115 Pac. 578)."

Appellants have also assigned as error the overruling of the motion for a new trial for newly discovered evidence. Immediately after the trial, the appellant ▮ diligently and speedily ran down leads disclosed during the trial and discovered much evidence that they believed would be helpful in a new trial. They found, as is set up in the various affidavits, that many persons dealt directly and only with the Anderson Oil Company and that Wood did nothing as far as some customers were concerned but deliver the products. They found that there was on file in a court of an ad-

joining county a complaint against a man named Hall (presumably a customer of Wood's) in which the complainant, Anderson Oil Company, alleged that gas was "*sold* and *delivered* to the defendant by the plaintiff Anderson Oil Co. at the special instance and request of this defendant." They found that the Anderson Oil Company had a mortgage only on the chassis of Wood's truck, and that they (the oil company) owned the tank, buckets and equipment. They found that Wood signed sales tickets of the Anderson Oil Company as "Anderson Oil Co. by W. R. W." That, in exhibits set out in the suit above referred to, the name of W. R. Wood appears under the heading "Driver." Appellees say that appellant did not show diligence in discovering this new evidence and, therefore, it should avail him nothing. It appears that they took an examination of W. R. Wood and that, on the points they later discovered, he could not remember at the time of said examination. Appellant employed local counsel to assist the counsel in chief from adjoining counties, all of whom, it must be presumed, made some preparation for the trial. Let us at least assume that they did not go into court without preparing their case to the best of their ability. Appellees say that this complaint and mortgage were of record and by the exercise of reasonable diligence it could have been discovered. Is it the duty of parties or counsel to examine all the records of a county to see that they disclose something advantageous? This would, in some instances, mean that an abstractor should be hired to ascertain the contents of all the records in the recorder's office. The cases hold that reasonable diligence must be exercised and we hold that that was done here.

Counsel examined the records of the drivers' license department and discovered a statement by Wood that he was the owner of the truck. He also told them this under oath. Counsel say in their affidavit that they

have discovered *new* evidence which they could not, with reasonable diligence, have discovered and produced at the trial. The word new means evidence new to them or their client and implies a prior lack of knowledge. Appellee Anderson Oil Company filed a counter affidavit and alleged that none of the facts discovered by appellant were actively concealed. There are many facts which are known to some people which would be of great benefit to others and could be known if search was made in certain places, but we believe that litigants are not supposed to make an inexhaustible or perfect search before they go into a trial. Reasonable diligence is all that the law requires. True these facts might have been discovered by reasonable diligence, but it is just as true that, by the exercise of reasonable diligence, they were not discovered. By the exercise of reasonable diligence it might have been discovered that the earth was round, but it took a long time for Magellan to prove what reasonable diligence was in such a case. What may appear reasonable at one time may be extremely unreasonable in other circumstances. In the case of *State* v. *Stowe* (1891), 3 Wash. 206, 28 Pac. 337, 14 L. R. A. 609, the court said: "If it is material testimony, it can only be material because it would tend to strengthen the applicant's case, and probably lead to different results; and if it *is* material, and applicant could not have discovered it with reasonable diligence, common justice demands that he should have the benefit of it. It is true that applications of this kind are directed largely to the discretion of the court, and great weight must be given to the judgment of the court with reference to them. Still, if this court thinks that, under all the circumstances of the case, substantial justice has been denied to the applicant, as we think it has in this case, we will not hesitate to reverse the ruling. No fixed standard can be established for the measurement

of every case, no iron-bound rule prescribed, but each case must be governed by the circumstances surrounding it." See, also, *Davis* v. *First Nat. Bank* (1924), 100 Okla. 190, 229 Pac. 228; *Railway Co.* v. *Lovelace* (1896), 57 Kans. 195, 45 Pac. 590; *New Amsterdam Casualty Co.* v. *Beardsley* (1924), 123 Misc. Rep. 292, 205 N. Y. Supp. 771. The above expression is the best that we have found and fully and completely expresses the law of Indiana and the views of this court.

The evidence as disclosed by the affidavits is material and would probably lead to a different result. Hence, the court erred in refusing to grant a new trial. *Simpson* v. *Wilson* (1855), 6 Ind. 474; *Sullivan* v. *O'Connor* (1881), 77 Ind. 149; *Morrison* v. *Carey* (1891), 129 Ind. 277, 28 N. E. 697; *Jackson* v. *Swope* (1893), 134 Ind. 111, 33 N. E. 909; *Smith* v. *State* (1896), 143 Ind. 685, 42 N. E. 913; *Donahue* v. *State* (1905), 165 Ind. 148, 74 N. E. 996; *Fleming* v. *McClaflin* (1891), 1 Ind. App. 537; 27 N. E. 875; *Westbrook* v. *Aultman, Miller & Co.* (1891), 3 Ind. App. 83, 28 N. E. 1011; *Richter* v. *Meyers* (1892), 5 Ind. App. 33, 31 N. E. 582; *Freeman* v. *Hutchinson* (1896), 15 Ind. App. 639, 43 N. E. 16; *Martz* v. *Cook* (1900), 24 Ind. App. 432, 56 N. E. 951; *Franklin* v. *Lee* (1901), 30 Ind. App. 31, 62 N. E. 78.

For both reasons above discussed, this case is remanded to the trial court, with instructions that a new trial be granted.