Robert L. SPILLERS, Plaintiff-Appellee,

v.

TRI-STATE GLASS LINED STORAGE, INC., Defendant-Appellant.

No. 14177.

United States Court of Appeals Seventh Circuit.

Dec. 6, 1963.

Richard C. Kaczmarek, South Bend, Ind., for appellant.

H. Hugh Kennerk, Fort Wayne, Ind., William Ramsey, Ramsey, Ramsey & Bodron, Vicksburg, Miss., Kennerk, Dumas & Burke, Fort Wayne, Ind., for plaintiff-appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Robert L. Spillers, brought this action in the United States District Court to recover damages for personal injuries sustained through the alleged negligence of the servant, agent and employee of defendant, Tri-State Glass Lined Storage, Inc., who drove a tractor-trailer unit owned by defendant, which was involved in an accident with the tractor-trailer owned and driven by plaintiff, on U. S. Route 15, in Wabash County, Indiana.

The jury brought in a verdict of $30,000 for plaintiff on which the District Court entered judgment. This appeal followed.

Defendant's position is that Daniel Miller, the driver of its tractor truck-trailer, was neither its employee nor agent, but instead was the employee of Willard Fick, an independent contractor who had agreed, pursuant to a written contract (defendant's exhibit No. 1), to hire, provide, and pay for all labor necessary to erect "Harvestore" silos for defendant.

Trial of this action was complicated by the fact that Daniel Miller, the driver, Willard Fick, alleged by defendant to be his independent contractor-employer, Robert Leubeck, defendant's construction superintendent, and Dr. Scott Hamilton, plaintiff's treating physician, had all died prior to the trial.

Defendant is a franchise dealer of A. O. Harvestores, Products, Inc., and sells, erects, and services the sealed silos known as "Harvestores." On May 24, 1958, defendant entered into the aforesaid written agreement with the late Mr. Fick, which specifically provided that Mr. Fick was to hire and provide all labor necessary for the erection of the Harvestore silos.

On March 12, 1959, the date of the accident, defendant's tractor-trailer, with defendant's equipment for erecting the silos (worth about $12,000) which was transported from job to job, was being driven by the late Mr. Miller.

█ Paragraph one of plaintiff's complaint, filed October 15, 1960, recites that defendant through its servant, agent, and employee, negligently drove the defendant's motor vehicle. Defendant filed its answer to this complaint. After a pre-trial conference had been held resulting in certain stipulations, not including the issue of agency, and after depositions were taken, plaintiff, on December 7, 1962, filed a second paragraph to his complaint, reciting that defendant through its servants, agents and employees, negligently permitted Daniel B. Miller to operate its truck and trailer. Defendant moved to strike this second paragraph on the ground that it failed to meet the requirements for a supplementary pleading because it did not set forth events occurring since the original pleading was filed, that it was filed without prior leave of Court, that it was misleading and incorrect, and that it stated a new and different cause of action after the tolling of the statute of limitations on March 12,

**324**

1961. Defendant asserts that permitting this amendment to be filed and denying defendant's motion to strike it constituted error.

It appears to us that plaintiff's second paragraph indicates a change of theory but not a different cause of action. The claim asserted clearly arises out of the same conduct, transaction, or occurrence set forth in the original pleading and relates back to the same date. Federal Rules of Civil Procedure, Rule 15(c). The amendment did not set forth a different but "the same matter more fully or differently laid." Blair v. Durham, 6 Cir., 1943, 134 F.2d 729, 731, and cases therein cited.

Defendant asserts that it was error to deny defendant's motion for a directed verdict at the conclusion of the plaintiff's evidence and at the conclusion of all the evidence.

Defendant argues that the written contract between defendant and Mr. Fick, which was an exhibit in this case, clearly shows that Mr. Fick was an independent contractor and that Mr. Miller was his, not defendant's employee; that the evidence shows that defendant's general manager, Leo Helvey, met Daniel Miller for the first time after the accident, and could not have given him prior permission to operate the defendant's truck and trailer, which with its equipment was furnished by defendant to the independent contractor, Willard Fick, for the purpose of erecting silos pursuant to the contract. Defendant argues further that the controlling evidence is documentary, presenting a question of interpretation and construction for the Court, and not an issue of fact for the jury.

Whatever binding effect this contract may have had with respect to the parties to it, it cannot be held to estop third persons, such as plaintiff, from adducing for consideration evidence of the entire situation and of all of the circumstances, including, but not confined to, the contract itself.

"[I]f from such a consideration there was any construction which a jury could legitimately have placed thereon which would under any view of the evidence have warranted a verdict for the plaintiff, it was error to direct a verdict." Estes v. Anderson, 93 Ind.App. 365, 372, 176 N.E. 560, 562 (1931) and cases there cited.

It is unnecessary for us to set out a full summary of the evidence adduced at the trial. The jury had a right to consider such matters as:

(a) the nature of the ownership, use, and storage of the equipment during and between the periods of its use for erecting silos, which was the business of defendant and of its alleged independent contractor, Willard Fick, and the methods of assigning the work to be done;

(b) the circumstances attendant at the scene of the accident when Daniel Miller called on defendant's Superintendent Leubeck as his "boss man;"

(c) the testimony of defendant's Secretary-Treasurer, Rex E. Parker, respecting his observation of Daniel Miller in and about the premises of the defendant;

(d) the pay records which showed that Willard Fick had been carried as an employee on defendant's pay roll as late as the week ending June 13, 1958, and the similarity of the work performed by him prior to and after entering into the contract of May 24, 1958;

(e) the fact that Willard Fick did not do all of the work necessary to erect the Harvestore storage structure as called for by the contract, the cement base and the steel floor construction being put in by two other crews;

(f) the fact that (again contrary to the terms of the contract) Willard Fick did not provide all the labor even for the erection of the silo sheets, as defendant contracted with the various farmer customers to supply the labor of up to four men in return for price concessions; and

(g) the methods of payment used, which were not disclosed in the contract.

Defendant argues, for example, that the consideration which the driver Daniel Miller (who was only eighteen years old at the time) showed to Superintendent Leubeck in referring to him as his "boss man" was only logical in the light of defendant's ownership of the equipment involved in the accident; that it does not establish the agency of Mr. Miller. Further defendant asserts that defendant's failure to make any demand on Willard Fick or Daniel Miller for the damage to defendant's equipment is consistent with modern business practices and is not susceptible of the inference (which plaintiff draws) that notwithstanding the written contract, defendant in fact regarded Willard Fick and Daniel Miller as employees. Similarly General Manager Helvey testified that defendant reimbursed Daniel Miller for the $16 fine levied against him (on a charge of being in the wrong lane of traffic at the time of the accident) as a free will, compassionate gesture to show that the defendant held no grudge against him for what Mr. Helvey considered to be an unavoidable thing over which Mr. Miller had no control. These are all plausible explanations of factors which the jury may have considered in arriving at their verdict, but they do present issues of fact properly left to the jury on the questions of agency or tacit authorization. On the issue of negligence there was evidence that the truck lacked safety chains, that Mr. Miller was only eighteen years old, and that Mr. Helvey neither investigated his ability, nor his license, to drive, nor instructed Mr. Fick concerning acceptable drivers for the defendant's truck.

As indicated, Dr. Hamilton, the plaintiff's treating physician, was dead when this case came to trial. Dr. Morris S. Friedman, the physician who did testify for plaintiff, examined plaintiff on February 6, 1961, for the express purpose of testifying to his condition.

Dr. Friedman was asked:

"Doctor, you may refer to your records and I will ask you to state to the Court and the Jury of what your examination consisted? You may go into your history and tell us what your findings were and what your diagnosis was."

Defendant's counsel objected on the ground that testimony as to the history would be merely hearsay, to which plaintiff's counsel replied:

"As a part of this examination and a part of the information which he necessarily needs to make a final conclusion and diagnosis, the history is quite important, and I think it is part of that and I believe that it is admissible."

Defendant contends that overruling the objection constituted prejudicial error.

Dr. Friedman was thus allowed to testify respecting statements made by plaintiff, or found in the records of the deceased treating physician, Dr. Hamilton, not for the purpose of testifying to the truth of these statements, but merely to the fact that they were made and that in part he relied on these statements in addition to the information acquired by his own physical examination of the plaintiff.

Defendant cites Cleveland, Columbus, Cincinnati & Indianapolis Ry. Co. v. Newell, 1885, 104 Ind. 264, 3 N.E. 836, 839, as authority for the statement that:

"In Indiana, since the year 1885, it has been the established rule that an examining physician, qualifying to testify as a medical expert, may not recite the history of the patient's injuries."

In that case, 104 Ind. at page 270, 3 N.E. at page 839, the Court speaks of the dangers of extending the rule of admissibility for statements of past suffering (made to a physician to enable him to form an opinion with a view to treatment) to other statements of the cause of injury or past occurrences which are not so nearly contemporaneous with the principal fact to which they relate as to constitute a part of the *res gestae*.

In Newell, the statements in question, made after suit had been commenced, and not wholly with a view to receiving medi-

cal treatment, did not concern past suffering, but then existing pain.

The Court further stated (104 Ind. at page 271, 3 N.E. at page 839):

"A physician may, however, testify to a statement or narration given by a patient in relation to his condition, symptoms, sensations, and feelings, both past and present, when such statements were received during and were necessary to an examination, with a view to treatment, *or where they are necessary to enable him to give his opinion as an expert witness.* [Citing cases.]" [Emphasis added.]

In Newell, this was mere dicta, but it is perhaps indicative of the view of Indiana Courts. The cases cited in support of this dicta are drawn from Alabama, Massachusetts, Tennessee and Wisconsin Courts.

Cited with approval in Newell, is the case of Quaife v. Chicago & Northwestern Ry. Co., 1880, 48 Wis. 513, at page 524, 4 N.W. 658 at page 664, where the Court states:

"It is true that statements made by the person claiming to be injured, made pending an action to recover damages for such injury, might not be entitled to the same weight as if they had been made before an action commenced, and for the purpose of getting medical advice; still this objection does not go to the competency of the evidence, but to its credibility.

\* \* \* \* \* \*

The experts in making the examination would naturally and necessarily, in order to make a fair one, inquire of the person to be examined whether she suffered pain or otherwise, where the pains were located, how long they had existed, and such other questions as their superior knowledge and skill would suggest for the purpose of determining whether her assumed illness was real or feigned, and having made all proper physical examinations they would form an opinion from her statements and such physical examinations \* \* \*."

It is true, as defendant asserts, that an extensive note in 51 A.L.R. 1051, 1065, indicates that many, probably the majority, of jurisdictions hold that the opinion of a physician based wholly or in part on statements related to him is inadmissible where the examination is made for the purpose of enabling the physician to qualify as a medical expert.

The scope of this note expressly excludes cases in which the medical expert hears the person in question give the history of his case on the witness stand, and is limited to cases where the narration of such person is not under oath. The rationale behind such holdings lies in the fact that the expert's testimony may very likely be based on the self-serving, unsupported and unsworn statements of the plaintiff.

In the case before us, plaintiff had already testified to the same matters prior to calling Dr. Friedman to the stand. The effect of Dr. Friedman's testimony as to plaintiff's statements was largely cumulative in nature. Dr. Friedman's opinion was not based on unsworn statements made in the absence of any opportunity for cross-examination.

In the A.L.R. note mentioned above there is also shown, (page 1073) a distinct and substantial line of cases supporting a contrary stand in circumstances analogous to those of the case before us. We believe that these cases embody the better reasoned view.

In Putney v. United States, D.C., Colo., 1933, 4 F.Supp. 376, 378, the Court noted that the expert physician based his opinion, that plaintiff had been totally and permanently disabled some 14 years prior, upon the plaintiff's own story, the evidence he heard while sitting in the courtroom, and upon his examination made a few days before trial. The Court held the evidence competent and of some probative value, observing that it must be weighed in the light of all these factors. See also Campbell v. Pittsburgh

& West Virginia R. Co., D.C., W.D., Pa., 1954, 122 F.Supp. 749, 751.

In Yellow Cab Transit v. Bethel, 1938, 183 Okl. 219, 81 P.2d 667, 668, the Court observed that it was made clear to the jury that the physician was testifying in part from the history of the case given him just before trial and that the attending physician was not available as a witness—as was the case in the matter before us. The jury was, therefore, placed on guard against possible deception and was able properly to weigh the testimony given.

In North West States Utilities Co. v. Brouilette, 1937, 51 Wyo. 132, 65 P.2d 223, 233, rehrg. den. 69 P.2d 623, the Court remarked with disapproval that three physicians who did not treat the plaintiff were allowed, over objection, to give opinions based in part on what plaintiff had told them without relating what was said during the examination. The Court stated that the substance of the statements on which the physicians relied should have been disclosed so that the jury might judge whether they conformed to the actual facts as shown by the evidence and might disregard any opinions based on assumption of nonexistent facts. However, the Court also observed that defendant's objections to this testimony were not based on the jury's failure to learn the nature of the statements on which the opinions were based, but merely on the fact that the physicians were allowed to testify that the statements were made and to give their opinions. The Court held that defendant had failed to show how he had been prejudiced in view of the whole record, as the fact that some damage was sustained by plaintiff was shown by testimony independent of the physicians' and their testimony went merely to the amount of such damage. The Court concluded that remanding the case, except for reassessing damages, was unjustified. The judgment of the Court below was, however, affirmed. In the case before us it is not contended that damages were excessive in amount. See also Waldroop v. Driver-Miller Plumbing & Heating Corp., 1956, 61 N.M. 412, 301

P.2d 521, reversed on other grounds, and cases there cited; DiMarzo v. Columbus Transit Co., 1955, 100 Ohio App. 521, 137 N.E.2d 766.

■ From a view of the record as a whole, we cannot say that defendant was prejudiced by admission of Dr. Friedman's testimony. The statements made must, of course, be subject to careful scrutiny with respect to their weight and credibility.

■ However, no question has been raised as to the propriety of the instructions propounded to the jury in this case. We must assume that the jury were appropriately instructed concerning the factor of the history on which Dr. Friedman, in part at least, based his opinion of the plaintiff's physical condition, and as to the legal, as distinguished from the factual, aspects of the written contract which was a part of the evidence in this case.

We have considered all other arguments advanced by defendant, but find them lacking in merit. The judgment of the District Court is affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

It is settled law that, upon the trial of a personal injury case when a physician, other than an attending physician, is called to testify for plaintiff, he is not permitted to express an opinion based upon statements made by plaintiff for the purpose of enabling the physician to testify in *his* behalf. While an attending physician, when called as a witness for plaintiff, may express a medical opinion based in part on statements made by his patient in connection with treatment, Cleveland, C., C. & I. R. Co. v. Newell, 104 Ind. 264, 270, 3 N.E. 836, 839 (1885), a physician who did not treat plaintiff for the injuries involved is limited to giving an answer to hypothetical questions put to him in court.

For these reasons, I respectfully dissent.